# Exhibit A

JEFFREY D. KALIEL (SBN 238293)
**KALIELGOLD PLLC**
1100 15th Street NW, 4th Floor
Washington, DC 20005
Telephone: (202) 350-4783
jkaliel@kalielpllc.com

SOPHIA G. GOLD (SBN 307971)
**KALIELGOLD PLLC**
950 Gilman Street, Suite 200
Berkeley, California 94710
Telephone: (202) 350-4783
sgold@kalielgold.com

*Attorneys for Plaintiffs and the Proposed Class*

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**11/05/2021**
**Clerk of the Court**
BY: ANGELICA SUNGA
Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN FRANCISCO

| | |
|---|---|
| REBECCA SCHWARTZ, ZACHARY CHIN, JOSEPH FLINDERS, DANIEL CHOU, and QUIANA PLEASANT, on behalf of themselves and all others similarly situated<br>Plaintiffs,<br><br>v.<br><br>DOORDASH, INC., and DOES 1- 50, inclusive,<br><br>Defendant. | Case No.   **CGC-21-596576**<br><br>**CLASS ACTION COMPLAINT**<br><br>**[DEMAND FOR JURY TRIAL]** |

    **Plaintiffs REBECCA SCHWARTZ, ZACHARY CHIN, JOSEPH FLINDERS, DANIEL CHOU, and QUIANA PLEASANT, on behalf of themselves and all others similarly situated, complain and allege upon information and belief based, among other things, upon the investigation made by Plaintiffs and through their attorneys as follows:**

## NATURE OF ACTION

    1.    This is a proposed class action seeking monetary damages, restitution, and injunctive and declaratory relief from Defendant Doordash, Inc. ("Defendant" or "DoorDash"), arising from its

deceptive and untruthful promises to provide food delivery services for a flat, low cost "Delivery Fee."

2.      Since the beginning of the COVID-19 pandemic, DoorDash has aggressively marketed its flat, low cost "Delivery Fees," exploiting an opportunity presented by Americans' reduced willingness to leave their homes.  To appeal to consumers in a crowded food delivery marketplace, DoorDash has prominently marketed a flat, low cost "Delivery Fee" in its mobile application.

3.      These representations, however, are false.  DoorDash imposes hidden delivery charges on its users in two ways.

4.      First, DoorDash makes the "Delivery Fee" it quotes to users appear to be lower than it actually is by hiding a portion of that delivery fee in a different line item called "Fees and Estimated Tax." Obscured from users and hidden with the "Fees and Estimated Tax" amount is an additional "Service Fee" that is nothing more than a delivery fee in disguise.  This "Service Fee"—which is itself obscured from users and bundled with a sales tax—amounts to an additional 15% of the food order amount. But it is not a "Service Fee" at all.  Because the *only* "service" provided by DoorDash is food delivery, this "Service Fee" is by definition an additional hidden delivery fee.  DoorDash obscures the true nature of the fee by naming it a "service fee."

5.      Second, and even more insidiously, DoorDash secretly marks up food prices for delivery orders only by 20-25%, without informing users.  In other words, the identical food costs more when ordered through the DoorDash app than it does when ordered in person at a restaurant or through the restaurant's own website or app.  Because DoorDash's only function is to provide food delivery services, this price differential is another hidden delivery fee.

6.      Both of these hidden delivery upcharges make DoorDash's flat, low cost "Delivery Fee" promises patently false.  The true delivery costs are obscured, as described above, and far exceed the prominent flat, low cost "Delivery Fee" promised.

7.      By falsely marketing flat, low cost "Delivery Fees," DoorDash deceives consumers into making online food purchases they otherwise would not make.

8.      DoorDash misrepresents the nature of the delivery charges assessed on the DoorDash

mobile application and the website, by issuing in-app and online marketing materials that fail to correct reasonable understandings of the flat, low cost "Delivery Fee" delivery promises, and that misrepresent the actual costs of the delivery service.

9.      Specifically, DoorDash omits and conceals material facts about the DoorDash delivery service, never once informing consumers in any disclosure, at any time, that: (a) use of the delivery service causes an increase in food prices; and (b) the so-called "service fee" is assessed exclusively on delivery customers and is therefore by definition a delivery charge.

10.      Hundreds of thousands of DoorDash customers like Plaintiffs have been assessed hidden delivery charges they did not bargain for, and will continue to be assessed such hidden delivery fees unless DoorDash's conduct is enjoined.

11.      Consumers like Plaintiffs reasonably understand the flat, low cost "Delivery Fee" representations mean the total additional cost they will pay as a result of having their food delivered, as opposed to ordering online from a restaurant and picking up food in person or ordering and picking up food in person.

12.      By unfairly obscuring its true delivery costs, DoorDash deceives consumers and gains an unfair upper hand on competitors that fairly disclose their true delivery charges. For example, DoorDash restaurant competitors Del Taco, El Pollo Loco, and P.F. Chang's all offer delivery services through their app and website.  But unlike DoorDash, those apps fairly and prominently represent their true delivery charges.

13.      Plaintiffs and the Class members have been injured by DoorDash's practices. Plaintiffs bring this action on behalf of themselves, the putative Classes, and the general public. Plaintiffs seek actual damages, punitive damages, restitution, and an injunction on behalf of the general public to prevent DoorDash from continuing to engage in its illegal practices described herein and to fairly allow consumers to decide whether they will pay DoorDash's delivery mark-ups.

## PARTIES

14.      Plaintiff Rebecca Schwartz is a citizen of the State of California who resides in Berkeley, California.

15.      Plaintiff Zachary Chin is a citizen of the State of New York who resides in New York,

New York.

16.     Plaintiff Joseph Flinders is a citizen of the State of Ohio who resides in Batavia, Ohio.

17.     Plaintiff Daniel Chou is a citizen of the State of California who resides in Long Beach, California.

18.     Plaintiff Quiana Pleasant is a citizen of the State of Massachusetts who resides in Rockland, Massachusetts.

19.     Defendant, DoorDash, Inc., is incorporated in Delaware and maintains its principal business offices in San Francisco, California.

## JURISDICTION AND VENUE

20.     This Court has jurisdiction over Defendant and the claims set forth below pursuant to Code of Civil Procedure § 410.10 and the California Constitution, Article VI § 10, because this case is a cause not given by statute to the other trial courts.

21.     Plaintiffs are informed and believe that the State of California has personal jurisdiction over the Defendant named in the action because Defendant is a corporation authorized to conduct and does conduct business in this State. Defendant maintains its corporate headquarters in California, is registered with the California Secretary of State to do sufficient business with sufficient minimum contacts in California, and/or otherwise intentionally avails itself of the California market by conducting business throughout California, including in the County of San Francisco, which has caused both obligations and liability of Defendant to arise in the County of Francisco.

22. The amount in controversy exceeds the jurisdictional minimum of this Court.

## COMMON FACTUAL ALLEGATIONS

**A.**     **Food Delivery Services Increase in Popularity, and then Explode in Popularity During the Pandemic**

23.     In 2018, the online food delivery industry was an astounding $82 billion in gross revenue and projected to exceed $200 billion by 2025.[1]

---

[1] *See* Frost & Sullivan, *$9.6 Billion in Investments Spurring Aggressive Expansion of Food Delivery Companies,* October 25, 2019, accessible at https://ww2.frost.com/news/press-releases/9-6-billion-

CLASS ACTION COMPLAINT

24.     US Foods reports that the average American consumer has two food delivery apps installed on their mobile phone and uses those apps three times per month.[2]

25.     The online food delivery industry predominately influences the country's most financially vulnerable populations. A nationwide research study conducted by Zion & Zion reveals that the largest user markets for online delivery food services are the young and the poor.[3] During a 90-day timeframe, 63% of consumers between the ages of 18 and 29 used a multi-restaurant delivery website or app service, followed by 51% of consumers between the ages of 30 to 44.[4] The study also demonstrated that the "less income a consumer earns, the more likely the consumer is to take advantage of restaurant delivery services," as those earning less than $10,000 per year ordered online delivery the most (51.6%).[5]

26.     Put plainly, the allure for online food delivery services has historically been based upon pure convenience. A 2019 Gallup study of third-party delivery services companies like GrubHub, DoorDash, and Uber Eats reported 72% of customers order online food delivery because they don't want to leave their house; 50% so that they can continue with their ongoing activities; and 41% to avoid bad weather.[6]

27.     According to data compiled by Yelp, food delivery orders have *doubled* since the COVID-19 outbreak began.[7]

28.     The arrival of the unprecedented COVID-19 pandemic escalated the value of online

---

in-investments-spurring-aggressive-expansion-of-food-delivery-companies/, last accessed January 19, 2021.

[2] *See* US Foods, *New Study Shows What Consumers Crave in a Food Delivery Service,* 2019, accessible at https://www.usfoods.com/our-services/business-trends/2019-food-delivery-statistics.html, last accessed January 19, 2021.

[3] *See* Aric Zion and Thomas Hollman, Zion & Zion Research Study, *Usage and Demographics of Food Delivery Apps,* accessible at https://www.zionandzion.com/research/food-delivery-apps-usage-and-demographics-winners-losers-and-laggards/, last accessed January 19, 2021.

[4] *Id.*

[5] *Id.*

[6] *See* Sean Kashanchi, Gallup, *Third-Party Delivery Will Grow; Is Your Restaurant Ready?,* May 6, 2019, accessible at https://www.gallup.com/workplace/248069/third-party-delivery-grow-restaurant-ready.aspx, last accessed January 19, 2021.

[7] *See* Tal Axelrod, The Hill, *Yelp: Delivery and take-out twice as popular as usual amid coronavirus,* March 20, 2020, available at https://thehill.com/policy/technology/488749-yelp-delivery-and-take-out-twice-as-popular-as-usual-amid-coronavirus, last accessed January 19, 2021.

food delivery services from one of pure convenience to that of a comforting necessity for many consumers who are sick, in a high-risk population group for COVID-19, or simply do not feel safe to leave their homes and venture out into the public to purchase food during quarantine.

29.     In its 2019 Economic Report conducted by research firm Technomic, DoorDash reported that 86% of customers agreed that DoorDash played an important role in helping them access food during the pandemic and 77% of consumers increased their use of third-party delivery services during this time.[8] Indeed, amidst the uncertainty of the novel virus, 68% of consumers now view ordering food online for delivery as the safer option.[9]

30.     The era of COVID-19 undoubtedly caused a significant revenue boom for third party delivery services. SEC filings indicate that the top four U.S. food-delivery apps (DoorDash, Uber Eats, GrubHub, and Postmates) collectively experienced a *$3 billion increase* in revenue in just two quarters, April through September, following the enactment of shelter-in-place restrictions throughout the nation.[10]

31.     The ramp up in utilization of food delivery services also had a massive positive impact on restaurant owners who were quickly on the brink of facing permanent closures during lockdown: 67% of restaurant operators said DoorDash was crucial to their business during COVID-19 and 65% say they were actually able to *increase* profits during this time because of DoorDash.

32.     In the wake of the food delivery surge, Consumer Reports highlighted the need for fee transparency for consumers who use these apps and services.[11] A research team investigated food delivery companies and the report measured their compliance with new rules regarding fees enacted

---

[8]*See* Technomic and DoorDash, 2019 Economic Impact Report, *The Impact of DoorDash on Economic Activity and Restaurant Resilience,* available at https://doordashimpact.com/media/2019-Economic-Impact-Report.pdf, last accessed January 19, 2021.
[9]*Id.*
[10]*See* Levi Sumagaysay, Market Watch, *The pandemic has more than doubled food-delivery apps' business. Now what?,* last updated November 27, 2020, available at https://www.marketwatch.com/story/the-pandemic-has-more-than-doubled-americans-use-of-food-delivery-apps-but-that-doesnt-mean-the-companies-are-making-money-11606340169, last accessed January 19, 2021.
[11]*See* Consumer Reports, *Collecting Receipts: Food Delivery Apps & Fee Transparency,* September 29, 2020, accessible at https://digital-lab-wp.consumerreports.org/wp-content/uploads/2020/09/Food-delivery_-Report.pdf, last accessed January 19, 2021.

in seven US cities aimed at protecting consumers and businesses during the pandemic. It found that these companies continued to not comply with the new ordinances and continued to "employ design practices that obfuscate fees." They concluded that "[c]onsumers deserve to have informed choices to understand what they are being charged for *and* how their dollars spent impacts the restaurants they support and patronize in their communities."

**B.**    **DoorDash's App Fails to Bind Users to Any Terms of Service**

33.    When a consumer downloads the DoorDash app, or uses the DoorDash website, the user is required to create an account in order to place an order for delivery or pickup.

34.    In order to do so, a user enters in a name and contact information.

35.    While the account creation screen contains a small hyperlink to view DoorDash's Terms of Service, users are not required affirmatively consent to such terms, such as by clicking a check box.

**C.**    **DoorDash Prominently Promises a Flat, Low-Cost Delivery Fee on its App**

36.    DoorDash prominently features flat, low cost "Delivery Fee" promises on its mobile application.

37.    Such representations are made on the home screen of the app and throughout the purchasing process.

38.    These flat, low cost "Delivery Fee" representations are then reiterated on the penultimate screen shown to consumers before finalizing a food purchase.

39.    Specifically, that penultimate screen states:

Subtotal: [representing the cost of the food selected]

Delivery Fee:  [stated as a flat amount]

Fees & Estimated Tax:  [representing sales taxes and additional fees]

CONTINUE:  [adding up the above]

40.    In the end, there was no way for Plaintiffs or other users of the DoorDash mobile application or website to avoid seeing DoorDash's promises of a flat, low cost "Delivery Fee."

**D.**    **DoorDash Omits and Conceals Material Facts About the Costs of the DoorDash Delivery Service**

7

41.     But those disclosures were false and misleading.

42.     First, DoorDash furtively marked up the cost of food reflected in the "Subtotal"—adding 20-25% to the cost of food ordered for delivery, as compared with the cost of the same food ordered from the restaurant directly, either online or in person.  Indeed, restaurants did not and do not make similar mark-ups for identical food items ordered for pickup via their apps or in person.

43.     DoorDash omitted this material fact from its app, never informing users of this secret food markup.

44.     This secret markup is in actuality a hidden delivery fee.  This alone renders false DoorDash's promise of a flat, low-cost "Delivery Fee," which is made repeatedly in the app, and then in the "Delivery Fee" line item on the order screen.

45.     In short, the "Delivery Fee" is not actually the flat fee quoted. The actual "Delivery Fee"—the extra charge for having food delivered as opposed to picking it up at the restaurant—is the listed "Delivery Fee" *plus* the hidden food markup applied by DoorDash.

46.     Second, DoorDash applies a "Service Fee" exclusively to delivery orders, hides that "Service Fee" from users behind a hyperlink, and misrepresents what the "Service Fee" is actually for:  a hidden delivery charge.

47.     On the ordering screen, and for the first time in the ordering process, DoorDash presents a line item called "Fees and Estimated Tax."  The ordering screen does not explain what "Fees and Estimated Tax" are comprised of.

48.     Indeed, the phrase "Fees and Estimated Tax" represents to reasonable consumers like Plaintiffs that the line item represents government-imposed assessments like taxes.  But that is not true.  By grouping DoorDash's own fees with government-imposed taxes, DoorDash intends to and does obscure the difference between the two.

49.     Only if a user clicks on an "i" button near that line do two further line-items appear: "Service Fee" and "Estimated Tax."  "Estimated Tax" adds the locally applicable sales tax rate. "Service Fee" adds a further charge of 15% of the total food cost.

50.     But because DoorDash's sole "service" is to provide delivery of food, this "Service Fee" is by definition an additional hidden delivery charge.

CLASS ACTION COMPLAINT

eason

51.     In short, this is another reason the disclosed "Delivery Fee" is not actually the flat fee represented.  The *actual* "Delivery Fee"—the extra charge for having food delivered as opposed to picking it up—is the listed "Delivery Fee" *plus* the hidden "Service Fee" markup applied by DoorDash.

52.     If that were not enough, DoorDash misrepresents the true nature of the "Service Fee."

53.     If a user clicks a further link next to "Service Fee," a disclosure appears stating that the fee "helps us operate DoorDash."

54.     This disclaimer is false and deceptive. "Operating DoorDash" **_is_** DoorDash's core service:  providing food delivery.  The "Service Fee" is a hidden delivery fee.

55.     DoorDash does not inform consumers the true costs of its delivery service and it misrepresents its Delivery Fee as a low-cost, flat fee, when in fact those costs are actually much higher.

**E.      Other Restaurant Industry Actors and DoorDash Competitors Disclose Delivery Fees Fairly and Expressly**

56.     By unfairly obscuring its true delivery costs, DoorDash deceives consumers and gains an unfair upper hand on competitors that fairly disclose their true delivery charges. For example, DoorDash competitors Del Taco, El Pollo Loco and P.F. Chang's all offer delivery services through their app and website.  But unlike DoorDash, these restaurants fairly and prominently represent their true delivery charges.

57.     For example, Del Taco does not mark-up food charges for delivery orders through its app, nor does it add an additional "service charge" to delivery orders.  Instead, for delivery orders its ordering screen presents the following:

Subtotal:

Tax:

Delivery Charge:

Tip:

58.     All line-item amounts are **_identical_** for delivery and pick-up orders, except for the plainly and fairly disclosed delivery charge—allowing consumers to understand the true cost of the

delivery service.

59.    Similarly, DoorDash competitor El Pollo Loco does not mark-up food charges for delivery orders through its app, nor does it add an additional "service charge" to delivery orders. Instead, for delivery orders its ordering screen presents the following:

Subtotal:

Delivery Charge:

Tax:

60.    All line-item amounts are **<u>identical</u>** for delivery and pick-up orders, except for the plainly and fairly disclosed delivery charge—allowing consumers to understand the true cost of the delivery service.

61.    Similarly, DoorDash competitor P.F. Chang's does not mark-up food charges for delivery orders through its app, nor does it add an additional "service charge" to delivery orders. Instead, for delivery orders its ordering screen presents the following:

Subtotal:

Delivery Estimate:

Tax:

62.    All line-item amounts are **<u>identical</u>** for delivery and pick-up orders, except for the plainly and fairly disclosed delivery charge—allowing consumers to understand the true cost of the delivery service.

**F.    Plaintiffs' Experiences**

***<u>Rebecca Schwartz</u>***

63.    Plaintiff Rebecca Schwartz used the DoorDash app to make a purchase of food from Shake Shack on May 2, 2021 in the total amount of $61.29.

64.    When using the app, and prior to placing her order, the DoorDash app stated that the "Delivery Fee" was $3.99.

65.    However, the cost of food ordered by Plaintiff Schwartz bore a hidden delivery fee markup. To illustrate, Plaintiff Schwartz ordered two Shack Burgers, two Fries, and Lemonade, among other items.

CLASS ACTION COMPLAINT

66.     Upon information and belief, the exact same food items would have cost Plaintiff Schwartz 20-25% *less* had she ordered for pickup from Shake Shack on its app or website or ordered in person from Shake Shack. The differential represented a hidden delivery fee.

67.     In addition, Plaintiff Schwartz's purchase included a hidden "Service Fee" of $5.59 that in fact represented an additional delivery fee.

68.     Plaintiff Schwartz would not have made the purchase if she had known the DoorDash Delivery Fee was not truly $3.99.

69.     If Plaintiff Schwartz had known the true Delivery Fee, she would have chosen another method for receiving food from Shake Shack or from another provider.

### ***Zachary Chin***

70.     Plaintiff Zachary Chin used the DoorDash app to make a purchase of food from LoveMama on December 5, 2020, in the total amount of $85.74.

71.     When using the app, and prior to placing his order, the DoorDash app stated that the "Delivery Fee" was free.

72.     However, the cost of the food ordered by Plaintiff Chin bore a hidden delivery fee markup. To illustrate, Plaintiff Chin ordered Pad Thai, Thai Fried Rice, Uncle Plump's Dumplings, among other items.

73.     Upon information and belief, the exact same food items would have cost Plaintiff Chin 20-25% *less* if he had ordered for pickup from LoveMama on its app or website or ordered in person from LoveMama. This differential represented a hidden delivery fee.

74.     In addition, Plaintiff Chin's purchase included a hidden "Service Fee" of $3.15 that in fact represented an additional delivery fee.

75.     Plaintiff Chin would not have made the purchase if he had known the DoorDash Delivery Fee was not truly free.

76.     If Plaintiff Chin had known the true Delivery Fee, he would have chosen another method for receiving food from LoveMama or from another provider.

77.     Plaintiff Chin experienced similarly inflated Delivery Fees when making food delivery purchases through DoorDash on at least two additional separate occasions: on November

24, 2020 on an order from La Palmera Family Mexican Restaurant (total $76.34) and on November 25, 2020 on an order from Red Hot & Blue (total $56.18). In each instance, DoorDash stated that the "Delivery Fee" was free. However, in each instance, the cost of food ordered by Plaintiff Chin bore a hidden delivery fee in the form of a "Service Fee" and price markups on each food item, resulting in a much higher "Delivery Fee" than advertised. Plaintiff Chin would not have made these purchases had he known the Delivery Fee was not in fact "free."

### *Joseph Flinders*

78.     Plaintiff Joseph Flinders used the DoorDash app to make a purchase of food from Indian Bistro on October 2, 2020 in the total amount of $22.62.

79.     When using the app, and prior to placing his order, the DoorDash app stated that the "Delivery Fee" was $1.99.

80.     However, the cost of food ordered by Plaintiff Flinders bore a hidden delivery fee markup. To illustrate, Plaintiff Flinders ordered Garlic Nan and Malai Kofta.

81.     Upon information and belief, the exact same food items would have cost Plaintiff Flinders 20-25% *less* if he had ordered for pickup through the Indian Bistro app or website or ordered in person from Indian Bistro. This differential represented a hidden delivery fee.

82.     In addition, Plaintiff Flinders' purchase included a hidden "Service Fee" of $1.65 that in fact represented an additional delivery fee.

83.     Plaintiff Flinders would not have made the purchase had he known the DoorDash Delivery Fee was not truly $1.99.

84.     If he had known the true Delivery Fee, he would have chosen another method for receiving food from Indian Bistro or from another provider.

85.     Plaintiff Flinders experienced similarly inflated Delivery Fees when making food delivery purchases through DoorDash on at least two additional separate occasions: on November 15, 2020 on an order from Indian Bistro (total $37.47) and on December 5, 2020 on an order from Chipotle (total $18.70). In each instance, DoorDash stated that the "Delivery Fee" was a flat fee of $1.99 or $2.99, respectively. However, in each instance, the cost of food ordered by Plaintiff Flinders bore a hidden delivery fee in the form of a "Service Fee" and price markups on each food item,

resulting in a much higher "Delivery Fee" than advertised. Plaintiff Flinders would not have made these purchases had he known that the Delivery Fee was not in fact a flat fee as advertised.

***Daniel Chou***

86.     Plaintiff Daniel Chou used the DoorDash app to make a purchase of food from SUP Noodle Bar on August 27, 2020, in the total amount of $67.58.

87.     When using the app, and prior to placing his order, the DoorDash app stated that the "Delivery Fee" was free.

88.     However, the cost of food ordered by Plaintiff Chou bore a hidden delivery fee markup. To illustrate, Plaintiff Chou ordered Garlic Chicken Wings, Pho Shrimp, and Pho Rib Bones among other items.

89.     Upon information and belief, the exact same food items would have cost Plaintiff Chou 20-25% *less* if he had ordered for pickup through the SUP Noodle Bar app or website or ordered in person from SUP Noodle Bar. This differential represented a hidden delivery fee.

90.     In addition, Plaintiff Chou's purchase included a hidden "Service Fee" of $2.78 that in fact represented an additional delivery fee.

91.     Plaintiff Chou would not have made the purchase had he known the DoorDash Delivery Fee was not truly free.

92.     If he had known the true Delivery Fee, he would have chosen another method for receiving food from SUP Noodle Bar or from another provider.

93.     Plaintiff Chou experienced similarly inflated Delivery Fees when making food delivery purchases through DoorDash on at least seven additional separate occasions: on August 30, 2020 on an order from Katsu Bar (total $62.25); on September 17, 2020 on an order from Dunkin' (total $18.51); on September 28, 2020 on an order from Pepper Lunch (total $51.12); on October 5, 2020 on an order from Ginzaya (total $73.15); on October 25, 2020 on an order from Clyde's (total $82.66); on November 19, 2020 on an order from Lee's Sandwiches (total $25.39); and on November 28, 2020 on an order from Chipotle (total $52.43). In each instance, DoorDash stated that the "Delivery Fee" was either "free" or a flat fee. However, in each instance, the cost of food ordered by Plaintiff Chou bore a hidden delivery fee in the form of a "Service Fee" and price markups on each

food item, resulting in a much higher "Delivery Fee" than advertised. Plaintiff Chou would not have made these purchases had he known the Delivery Fee was not in fact "free" or a flat fee as advertised.

### *Quiana Pleasant*

94.     Plaintiff Quiana Pleasant used the DoorDash app to make a purchase of food from Bertucci's on May 1, 2020, in the total amount of $48.20.

95.     When using the app, and prior to placing her order, the DoorDash app stated that the "Delivery Fee" was a flat $2.99.

96.     However, the cost of food ordered by Plaintiff Pleasant bore a hidden delivery fee markup. To illustrate, Plaintiff Pleasant ordered Chicken Wings and Shrimp Rossini.

97.     Upon information and belief, the exact same food items would have cost Plaintiff Pleasant 20-25% *less* if she had ordered for pickup through the Bertucci's app or website or ordered in person from Bertucci's. This differential represented a hidden delivery fee.

98.     In addition, Plaintiff Pleasant's purchase included a hidden "Service Fee" of $4.12 that in fact represented an additional delivery fee.

99.     Plaintiff Pleasant would not have made the purchase if she had known the DoorDash Delivery Fee was not truly $2.99.

100.     If she had known the true Delivery Fee, she would have chosen another method for receiving food from Bertucci's or from another provider.

101.     Plaintiff Pleasant experienced similarly inflated Delivery Fees when making food delivery purchases through DoorDash on at least three additional separate occasions: on November 24, 2020 on an order from Chili's Grill & Bar (total $46.34); on November 24, 2020 on an order from Auntie Anne's (total $22.86); and on November 1, 2020 on an order from Chili's Grill & Bar (total $58.99). In each instance, DoorDash stated that the "Delivery Fee" was a flat fee of $8.99 or $6.99. However, in each instance, the cost of food ordered by Plaintiff Pleasant bore a hidden delivery fee in the form of a "Service Fee" and price markups on each food item, resulting in a much higher "Delivery Fee" than advertised. Plaintiff Pleasant would not have made these purchases had she known the Delivery Fee was not in fact a flat fee as advertised.

### CLASS ALLEGATIONS

102.    Pursuant to California Code of Civil Procedure § 382, Plaintiffs bring this action on behalf of themselves and Classes of similarly situated persons defined as follows:

**California Class**
All consumers in California who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, ordered food delivery through the DoorDash mobile app or website, and were assessed higher delivery charges than represented.

**New York Class**
All consumers in New York who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, ordered food delivery through the DoorDash mobile app or website, and were assessed higher delivery charges than represented.

**Massachusetts Class**
All consumers in Massachusetts who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, ordered food delivery through the DoorDash mobile app or website, and were assessed higher delivery charges than represented.

**Ohio Class**
All consumers in Ohio who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, ordered food delivery through the DoorDash mobile app or website, and were assessed higher delivery charges than represented.

**Nationwide Class**
All consumers who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, ordered food delivery through the DoorDash mobile app or website, and were assessed higher delivery charges than represented.

103.    Excluded from the Classes are Defendants, any entities in which they have a controlling interest, any of their parents, subsidiaries, affiliates, officers, directors, employees and members of such persons' immediate families, and the presiding judge(s) in this case, and their staff. Plaintiffs reserve the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with his motion for class certification, or at any other time, based upon, *inter alia,* changing circumstances and/or new facts obtained during discovery.

104.    **Numerosity**:  At this time, Plaintiffs do not know the exact size of the Classes; however, due to the nature of the trade and commerce involved, Plaintiffs believe that the Class members are well into the thousands, and thus are so numerous that joinder of all members is

impractical. The number and identities of Class members is administratively feasible and can be determined through appropriate discovery in the possession of the Defendant.

105. **Commonality**: There are questions of law or fact common to the Classes, which include, but are not limited to the following:

a. Whether during the class period, Defendant deceptively represented its Delivery Fee on food deliveries ordered through the DoorDash mobile app;

b. Whether Defendant's alleged misconduct misled or had the tendency to mislead consumers;

c. Whether Defendant engaged in unfair, unlawful, and/or fraudulent business practices under the laws asserted;

d. Whether Defendant's alleged conduct constitutes violations of the laws asserted;

e. Whether Plaintiffs and members of the Classes were harmed by Defendant's misrepresentations;

f. Whether Plaintiffs and the Classes have been damaged, and if so, the proper measure of damages; and

g. Whether an injunction is necessary to prevent Defendant from continuing to deceptively represent its Delivery Fee on food deliveries ordered through the DoorDash app.

106. **Typicality**: Like Plaintiffs, many other consumers ordered food for delivery from DoorDash's website or mobile app, believing delivery to be flat, low cost "Delivery Fee" based on Defendant's representations. Plaintiffs' claims are typical of the claims of the Classes because Plaintiffs and each Class member was injured by Defendant's false representations about the true nature of the delivery fee. Plaintiffs and the Classes have suffered the same or similar injury as a result of Defendant's false, deceptive and misleading representations. Plaintiffs' claims and the claims of members of the Classes emanate from the same legal theory, Plaintiffs' claims are typical of the claims of the Classes, and, therefore, class treatment is appropriate.

107. **Adequacy of Representation**: Plaintiffs are committed to pursuing this action and

CLASS ACTION COMPLAINT

have retained counsel competent and experienced in prosecuting and resolving consumer class actions. Plaintiffs will fairly and adequately represent the interests of the Classes and do not have any interests adverse to those of the Classes.

108. **The Proposed Classes Satisfy the Rule 23(b)(2) Prerequisites for Injunctive Relief**. Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive and equitable relief with respect to the Classes as a whole. Plaintiffs remain interested in ordering food for delivery through DoorDash's website and mobile app; there is no way for them to know when or if Defendant will cease deceptively misrepresenting the cost of delivery.

109. Specifically, Defendant should be ordered to cease from representing their delivery service as flat, low cost "Delivery Fee" and to disclose the true nature of their mark-ups.

110. Defendant's ongoing and systematic practices make declaratory relief with respect to the Classes appropriate.

111. **The Proposed Classes Satisfy the Rule 23(b)(3) Prerequisites for Damages**. The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Classes, and a class action is the superior method for fair and efficient adjudication of the controversy. The likelihood that individual members of the Classes will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially when compared to the relatively modest amount of monetary, injunctive, and equitable relief at issue for each individual Class member.

**CAUSES OF ACTION**
**FIRST CLAIM FOR RELIEF**
**Violation of California's Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code § 17200, *et seq.*
(Asserted On Behalf of the California Class)**

112. Plaintiffs incorporate the preceding allegations by reference as if fully set forth herein.

113. California Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice." DoorDash's conduct related to deceptively representing that it provides its food delivery services for a flat, low

17
CLASS ACTION COMPLAINT

cost "Delivery Fee" on food deliveries ordered through its website and mobile app violates each of the statute's "unfair," "unlawful," and "fraudulent" prongs.

114.    The UCL imposes strict liability. Plaintiffs need not prove that DoorDash intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

115.    A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

116.    A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the public.

117.    A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

118.    DoorDash committed unfair and fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.,* by affirmatively and knowingly misrepresenting on its website and mobile app that it provides a flat, low-cost Delivery Fee for food orders, when, in reality, it hides delivery charges through hidden food markup applied exclusively to delivery orders, and through the assessment of an elusive "Service Fee" exclusively charged to delivery customers.

119.    Defendant's acts and practices offend an established public policy of fee transparency in the marketplace, and constitute immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

120.    The harm to Plaintiffs and the Class outweighs the utility of Defendant's practices. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misleading and deceptive conduct described herein.

121.    Defendant's conduct also constitutes an "unlawful" act under the UCL because, as detailed in Plaintiffs' Second Claim for Relief below, it also constitutes a violation of sections 1770(a)(5) and (a)(9) of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq., infra,* in that DoorDash deceptively represents that it charges a flat, low cost "Delivery

Fee" for food orders made on its website or mobile app; in reality, however, this marketing message is false because DoorDash's (a) use of the delivery service causes an increase in food prices; and (b) the so-called "service fee" is assessed exclusively on delivery customers and is therefore by definition a delivery charge.

122.   DoorDash's business practices have misled Plaintiffs and the proposed Class and will continue to mislead them in the future.

123.   Plaintiffs relied on Defendant's misrepresentations about the falsely advertised cost of delivery in choosing to utilize the DoorDash food delivery service in ordering food from Defendant's website or mobile app.

124.   By falsely marketing a flat, low cost "Delivery Fee," DoorDash deceived Plaintiffs and Class members into making online food purchases they otherwise would not make.

125.   Had Plaintiffs known the truth of the delivery service fee, *i.e.,* that DoorDash's "Service Fee" and hidden food markups were in all reality "delivery fees," they would have chosen another method for receiving food, including ordering food from another provider.

126.   As a direct and proximate result of DoorDash's unfair, fraudulent, and unlawful practices, Plaintiffs and Class members suffered and will continue to suffer actual damages. Defendant's fraudulent conduct is ongoing and present a continuing threat to Class members that they will be deceived into ordering food for delivery under the false belief that DoorDash's true delivery charge was represented by its prominently represented "Delivery Fee."

127.   As a result of its unfair, fraudulent, and unlawful conduct, DoorDash has been unjustly enriched and should be required to disgorge its unjust profits and make restitution to Plaintiffs and Class members pursuant to Cal. Bus. & Prof. Code § 17203 and 17204.

128.   Pursuant to Business & Professions Code §§ 17203 and 17500, Plaintiffs and the members of the Class, on behalf of the general public, seek an order of this Court enjoining Defendant from continuing to engage, use, or employ their unfair, unlawful, and fraudulent practices.

**SECOND CLAIM FOR RELIEF**
**Violation of California's Consumer Legal Remedies Act ("CLRA")**
**Cal. Civ. Code § 1750, *et seq.***
**(Asserted On Behalf of the California Class)**

129.    Plaintiffs incorporate the preceding allegations by reference as if fully set forth herein.

130.    This cause of action is brought pursuant to the Consumers Legal Remedies Act (CLRA), California Civil Code § 1750, *et seq*.  Plaintiffs and each member of the proposed Class are "consumers" as defined by California Civil Code § 1761(d). Defendant's sale of food products to consumers for delivery ordered through its website and mobile app were "transactions" within the meaning of California Civil Code § 1761(e). Defendant's online delivery service utilized by Plaintiffs and the Class is a "service" within the meaning of California Civil Code § 1761(b). The food products purchased by Plaintiffs and the Class are "goods" within the meaning of California Civil Code § 1761(a).

131.    Defendant violated and continues to violate the CLRA by engaging in the following practices proscribed by California Civil Code § 1770(a) in transactions with Plaintiffs and the Class which were intended to result in, and did result in, the sale of DoorDash food orders for delivery:

a.    "Representing that goods or services have . . . characteristics . . . that they do not have" (a)(5); and

b.    "Advertising goods or services with intent not to sell them as advertised" (a)(9).

132.    Specifically, DoorDash advertises to customers that the charge for use of its delivery service represented by the "Delivery Fee" disclosed, but this is false because Defendant imposes hidden delivery charges to consumers through two ways: (1) by secretly marking up food items applied exclusively for delivery orders and (2) by covertly applying a "Service Fee" and misrepresenting that it is actually a delivery charge.

133.    At no time does DoorDash disclose the true nature of its delivery fee to consumers; instead, it repeatedly conceals and misrepresents this material information at several steps of the transaction process.

134.    DoorDash continues to violate the CLRA and continues to injure the public by misleading consumers about its delivery fees. Accordingly, Plaintiffs seek injunctive relief on behalf of the general public to prevent DoorDash from continuing to engage in these deceptive and illegal practices. Otherwise, Plaintiff, the Class members, and members of the general public may be

irreparably harmed and/or denied effective and complete remedy if such an order is not granted.

135.    In accordance with Cal. Civ. Code § 1780(a), Plaintiffs and the Class members seek injunctive and equitable relief on behalf of the general public for violations of the CLRA, including restitution and disgorgement.

136.    Pursuant to § 1782(a) of the CLRA, Plaintiffs' counsel notified Defendant in writing by certified mail of the particular violations of §1770 of the CLRA and demanded that it rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's intent to act. If Defendant fails to respond to Plaintiffs' letter or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice, as proscribed by §1782, Plaintiffs will move to amend their Complaint to pursue claims for actual, punitive and statutory damages, as appropriate against Defendant.  As to this cause of action, at this time, Plaintiffs seek only injunctive relief.

**THIRD CLAIM FOR RELIEF**
**False and Misleading Advertising**
**[Business & Professions Code §§ 17500, *et seq.*]**
**(Asserted On Behalf of the California Class)**

137.    Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth herein.

138.    California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, states that "[i]t is unlawful for any ... corporation ... with  intent … to dispose  of ... personal property ... to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated ... from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement...which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading...."

139.    Defendant's material misrepresentations and omissions alleged herein violate Bus. & Prof. Code § 17500.

140.     Defendant knew or should have known that its misrepresentations and omissions were false, deceptive, and misleading.

141.     Pursuant to Business & Professions Code §§ 17203 and 17500, Plaintiffs and the members of the Class, on behalf of the general public, seek an order of this Court enjoining Defendants from continuing to engage, use, or employ their practice of misrepresenting their delivery fees.

142.     Further, Plaintiffs and the members of the Class seek an order requiring Defendant to disclose such misrepresentations, and additionally request an order awarding Plaintiffs restitution of the money wrongfully acquired by Defendants by means of said misrepresentations.

143.     Additionally, Plaintiffs and the Class members seek an order requiring Defendants to pay attorneys' fees pursuant to Cal. Civ. Code § 1021.5.

**FOURTH CLAIM FOR RELIEF**
**Deceptive Acts or Practices**
**[N.Y. Gen. Bus. Law § 349, *et seq.*]**
**(Asserted On Behalf of the New York Class)**

144.     Plaintiffs re-allege and incorporate the foregoing paragraphs as though fully set forth herein.

145.     This cause of action is brought under New York's General Business Law § 349, *et seq.*

146.     N.Y. Gen. Bus. Law § 349(a) provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

147.     DoorDash committed deceptive acts and practices in violation of N.Y. Gen. Bus. Law § 349 by affirmatively and knowingly misrepresenting on its website and mobile app that it provides a flat, low-cost delivery fee for food orders, when, in reality, it hides delivery charges in the form of a hidden "Service Fee" and through hidden food markups applied exclusively to delivery orders.

148.     DoorDash's actions regarding its food delivery service, as described herein, are

CLASS ACTION COMPLAINT

deceptive acts or practices in the conduct of business trade or commerce of food and in the furnishing of food delivery services.

149.    The deceptive acts or practices and the furnishing of food delivery services took place in this State because DoorDash operates in this State and because the food delivery transaction took place in this State when DoorDash accepted Plaintiff's food delivery order placed on the DoorDash website or mobile app in this State. In short, the underlying nature of the deceptive transactions occurred in New York.

150.    N.Y. Gen. Bus. Law § 349(h) provides that "any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such action."

151.    Plaintiff and the Class have been injured by Defendant's violations of N.Y. Gen. Bus. Law § 349.

152.    Defendant's misleading and deceptive conduct occurred, and continues to occur, in the course of DoorDash's business.

153.    As an actual and proximate result of Defendant's misconduct, Plaintiff and the Class were injured and suffered damages.

154.    Defendant is liable to Plaintiff and the Class for damages in amounts to be proven at trial.

**FIFTH CLAIM FOR RELIEF**
**Consumer Protection Act**
**[Mass. Gen. Laws c. 93A, *et seq.*]**
**(Asserted On Behalf of the Massachusetts Class)**

155.    Plaintiffs re-allege and incorporate the preceding paragraphs as though fully set forth herein.

156.    The Massachusetts Consumer Protection Act declares unlawful any "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws c. 93A, § 2.

157.     Defendant's acts and practices were in and affected trade or commerce as defined by Mass. Gen. Laws c. 93A.

158.     Defendant engaged in unfair and deceptive acts and practices relating to its "Delivery Fee" for food orders placed for delivery through the DoorDash app or website. Specifically, DoorDash advertises to customers that the charge for use of its delivery service represented by the "Delivery Fee" disclosed, but this is false because Defendant imposes hidden delivery charges to consumers through two ways: (1) by secretly marking up food items applied exclusively for delivery orders and (2) by covertly applying a "Service Fee" and misrepresenting that it is actually a delivery charge.

159.     Defendant's acts and practices proximately caused injury to Plaintiff and the Class, and they are entitled to damages, injunctive and declaratory relief.

160.     Defendant's actions as detailed above were knowing or willful violations of Mass. Gen. Laws c. 93A, § 2, entitling Plaintiff and the Class members to an award of double or treble damages.

161.     Before filing this Complaint, and in accordance with Section 9(3), Plaintiff sent a written demand to Defendant regarding DoorDash's deceptive and untruthful promises to provide food delivery services for a flat, low cost "Delivery Fee." Defendant did not make a satisfactory response or reasonable offer of settlement.

162.     Because of the unfair and deceptive acts and practices of Defendant, on behalf of the Class, Plaintiff seeks actual damages, minimum statutory damages, double and treble damages, injunctive relief, and other such equitable relief as the Court finds necessary and proper, as well as reasonable attorneys' fees and costs. Mass. Gen. Laws c. 93A, § 9(3).

## SIXTH CLAIM FOR RELIEF
### Consumer Sales Practices Act – Unfair or Deceptive Acts or Practices
### [Ohio Rev. Code Ann. § 1345.02, *et seq.*]
### (Asserted On Behalf of the Ohio Class)

163.     Plaintiffs re-allege and incorporate the preceding paragraphs as though fully set forth herein.

CLASS ACTION COMPLAINT

164.   The Ohio Consumer Sales Practices Act (the "CPSA") prohibits unfair or deceptive acts or practices in connection with consumer transactions.

165.   DoorDash is a "supplier" as that term is defined in Ohio Rev. Code Ann. § 1345.01(C) and Plaintiff and the Ohio Class are "persons" and "consumers" as those terms are defined in Ohio Rev. Code Ann. § 1345.01(B) and (D).

166.   The purchase of food orders for delivery via the DoorDash app and website constitutes a "consumer transaction" as that term is defined in Ohio Rev. Code § 1345.01(A).

167.   DoorDash violated the CPSA when it knowingly and intentionally engaged in unfair and deceptive acts and practices relating to its "Delivery Fee" for food orders placed for delivery through the DoorDash app or website. Specifically, DoorDash advertises to customers that the charge for use of its delivery service represented by the "Delivery Fee" disclosed, but this is false because Defendant imposes hidden delivery charges to consumers through two ways: (1) by secretly marking up food items applied exclusively for delivery orders and (2) by covertly applying a "Service Fee" and misrepresenting that it is actually a delivery charge.

168.   Defendant's acts and practices were likely to and did in fact deceive and mislead reasonable consumers, including Plaintiff and the Class, about the true cost of using DoorDash's delivery service.

169.   Plaintiff and the Class suffered ascertainable loss and actual damages as a direct and proximate result of DoorDash's misrepresentations and omissions regarding the true nature of its "Delivery Fees."

170.   Because of the unfair and deceptive acts and practices of Defendant, on behalf of the Class, Plaintiff seeks actual damages, statutory damages, injunctive and declaratory relief, and other such equitable relief as the Court finds necessary and proper, as well as reasonable attorneys' fees and costs. Ohio Rev. Code Ann. § 1345.09.

**<u>SEVENTH CLAIM FOR RELIEF</u>**
**Deceptive Trade Practices Act**
**[Ohio Rev. Code § 4165.01, *et seq.*]**
**(On Behalf of the Ohio Class)**

171.   Plaintiffs re-allege and incorporate the preceding paragraphs as though fully set forth herein.

172.   Plaintiff brings this action pursuant to Ohio's Deceptive Trade Practices Act (the "DTPA"), Ohio Rev. Code § 4165.01, *et seq.*

173.   Defendant violated and continues to violate the DTPA by engaging in the following practices proscribed by Ohio Revised Code § 4165.02 in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of DoorDash food orders for delivery:

    a.   "[r]epresent[ing] that goods or services have…characteristics…that they do not have…"(A)(7); and

    b.   "advertis[ing] goods or services with intent not to sell them as advertised;" (A)(11).

174.   Specifically, DoorDash advertises to customers that the charge for use of its delivery service represented by the "Delivery Fee" disclosed, but this is false because Defendant imposes hidden delivery charges to consumers through two ways: (1) by secretly marking up food items applied exclusively for delivery orders and (2) by covertly applying a "Service Fee" and misrepresenting that it is actually a delivery charge.

175.   At no time does DoorDash disclose the true nature of its delivery fee to consumers; instead, it repeatedly conceals and misrepresents this material information at several steps of the transaction process.

176.   DoorDash continues to violate the DTPA and continues to injure the public by misleading consumers about its delivery fees. Accordingly, Plaintiffs seek injunctive relief on behalf of the general public to prevent DoorDash from continuing to engage in these deceptive and illegal practices. Otherwise, Plaintiff, the Class members, and members of the general public may be irreparably harmed and/or denied effective and complete remedy if such an order is not granted.

177.   In accordance with Ohio Rev. Code § 4165.03(A)(1), Plaintiff and the Class members seek injunctive relief on behalf of the general public for violations of the DTPA; actual damages pursuant to Ohio Rev. Code § 4165.03(A)(2); and reasonable attorneys' fees arising from DoorDash's willful violation of the DTPA in accordance with Ohio Rev. Code § 4165.03(B).

## EIGHTH CLAIM FOR RELIEF
### Unjust Enrichment
**(Asserted On Behalf of the California Class, the New York Class, the Massachusetts Class, the Ohio Class, and the Nationwide Class)**

178.    Plaintiffs re-allege and incorporate the preceding paragraphs as though fully set forth herein.

179.    To the detriment of Plaintiffs and the Classes, Defendant has been, and continues to be, unjustly enriched as a result of its wrongful conduct alleged herein.

180.    Plaintiffs and the Classes conferred a benefit on Defendant when they paid Defendant higher Delivery Fees than advertised.

181.    Defendant unfairly, deceptively, unjustly, and/or unlawfully seized and accepted said benefits which, under the circumstances, would be unjust to allow Defendant to retain.

182.    Defendant's unjust enrichment is traceable to, and resulted directly and proximately form, the conduct alleged herein.

183.    Plaintiffs and the Classes, therefore, seek disgorgement of all wrongfully obtained fees received by Defendant as a result of its inequitable conduct as more fully stated herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs on behalf of themselves and the Classes seek judgment in an amount to be determined at trial, as follows:

(a)     For public injunctive relief, enjoining Defendant from continuing the unlawful practices set forth above;

(b)     For declaratory and injunctive relief as set forth above;

(c)     For an order requiring Defendant to disgorge and make restitution of all monies it acquired by means of the unlawful practices set forth above;

(d)     For compensatory damages according to proof;

(e)     For punitive damages according to proof;

(f)     For reasonable attorneys' fees and costs of suit;

(g)     For pre-judgment interest; and

CLASS ACTION COMPLAINT

(h)        Awarding such other and further relief as this Court deems just, proper and

equitable.

## JURY DEMAND

Plaintiffs hereby demand a jury trial on all claims so triable.


Dated: November 5, 2021                    **KALIELGOLD PLLC**


                                           By:_____
                                              Jeffrey D. Kaliel (SBN 238293)
                                              *jkaliel@kalielgold.com*
                                              Sophia G. Gold
                                              sgold@kalielgold.com

                                           *Attorneys for Plaintiffs and the Proposed Classes*

CLASS ACTION COMPLAINT