1  GIBSON, DUNN & CRUTCHER LLP
   JOSHUA S. LIPSHUTZ, SBN 242557
2    jlipshutz@gibsondunn.com
   555 Mission Street, Suite 3000
3  San Francisco, CA 94105-0921
   Telephone: 415.393.8200
4  Facsimile:  415.393.8306

5  MICHAEL HOLECEK, SBN 281034
     mholecek@gibsondunn.com
6  ILISSA SAMPLIN, SBN 314018
     isamplin@gibsondunn.com
7  333 South Grand Avenue
   Los Angeles, CA 90071-3197
8  Telephone: 213.229.7000
   Facsimile:  213.229.7520
9
   Attorneys for DoorDash, Inc.
10
                  UNITED STATES DISTRICT COURT
11
                  NORTHERN DISTRICT OF CALIFORNIA
12
                       OAKLAND DIVISION
13

14 | REBECCA SCHWARTZ, ZACHARY CHIN, | CASE NO. 4:22-cv-00250-YGR
   | JOSEPH FLINDERS, DANIEL CHOU, and |
   | QUIANA PLEASANT, on behalf of | **DEFENDANT DOORDASH, INC.'S NOTICE**
15 | themselves and all others similarly situated, | **OF MOTION AND MOTION TO COMPEL**
   | | **ARBITRATION AND STAY PROCEEDINGS**
16 |             Plaintiffs, |

17 |        v. | Judge:  Hon. Yvonne Gonzalez Rogers
   | | Court:  Courtroom 1 - 4th Floor
18 | DOORDASH, INC., a Delaware company; and | Date:   May 31, 2022
   | DOES 1–100, inclusive, | Time:   2:00 p.m.
19 |

20 |             Defendant. |

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on May 31, 2022 at 2:00 p.m. or as soon as the matter may be heard before the Honorable Yvonne Gonzalez Rogers of the United States District Court for the Northern District of California at the San Francisco Courthouse, Courtroom 1, 4th Floor, 1301 Clay Street, Oakland, CA 94612, Defendant DoorDash, Inc. will and hereby does move this Court for an order compelling arbitration on an individual basis of the claims of Plaintiffs Zachary Chin, Joseph Flinders, and Quiana Pleasant (collectively, "Plaintiffs") and staying this action. *See* 9 U.S.C. §§ 2–4.

Plaintiffs' claims arise out of their use of Defendant's technology, and their claims are within the scope of the arbitration provision to which Plaintiffs agreed when agreeing to DoorDash's Terms and Conditions. That provision governs any and all matters arising out of, or related to, (among other things) Plaintiffs' use of, or interaction with, the DoorDash application and/or website. Shao Decl. Exs. G § 12(a); F § 12(a); E § 12(a); D § 12(a); B § 12(a); O § 12(a); M § 12(1)(a).

Because Plaintiffs have agreed to arbitrate their disputes with DoorDash, and because Plaintiffs' claims are governed by those agreements, the Court should compel arbitration of Plaintiffs' claims. 9 U.S.C. §§ 2, 4. In addition, the Court should stay all civil proceedings pending completion of the arbitration. *See id.* § 3.

This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the accompanying Declarations of Victor Shao and Ilissa Samplin, all records and pleadings on file with the Court in this matter, all other matters of which the Court may take judicial notice, and all further evidence and argument that may be presented in Reply in further support of this Motion or at or before the hearing on this matter.

Dated: March 23, 2022

*/s/ Ilissa Samplin*

**GIBSON, DUNN & CRUTCHER**
Ilissa Samplin (SBN 314018)
isamplin@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................ 1

STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY ........................................ 2

    A.    DoorDash's Platform Connects Customers, Restaurants, and Delivery Contractors ............................................................................................................ 2

    B.    Plaintiffs Sign Up for DoorDash Accounts and Agree to Arbitrate Their Disputes on an Individual Basis Under the T&C Several Times ............................... 2

        1.    Plaintiff Flinders Repeatedly Agrees to the T&C ............................................ 2

        2.    Plaintiff Pleasant Repeatedly Agrees to the T&C ........................................... 5

        3.    Plaintiff Chin Repeatedly Agrees to the T&C ................................................. 6

    C.    Plaintiffs File This Lawsuit Against DoorDash Notwithstanding Their Agreements to Individually Arbitrate Disputes .................................................... 7

ARGUMENT ...................................................................................................................... 8

    A.    The Arbitration Agreement in the T&C Is Governed by the Federal Arbitration Act ................................................................................................. 8

    B.    Plaintiffs Agreed to Arbitrate Their Claims on an Individual Basis ......................... 9

        1.    The Delegation Clause in the Arbitration Agreement Is Valid and Enforceable ................................................................................................ 10

        2.    The Gateway Issues Under the FAA Are Satisfied ........................................ 11

            a.    A Valid Agreement to Arbitrate Exists ................................................ 12

            b.    Plaintiffs' Claims Are Covered by the Arbitration Agreement .......... 18

    C.    The Arbitration Class-Action Waivers Are Enforceable ........................................ 19

CONCLUSION ................................................................................................................. 20

Gibson, Dunn & Crutcher LLP

**Cases**

*Ajemian v. Yahoo!, Inc.*,
   83 Mass. App. Ct. 565 (2013) .................................................................................12, 13, 14, 16

*Allied-Bruce Terminix Cos. v. Dobson*,
   513 U.S. 265 (1995) ..........................................................................................................9

*Am. Express Corp. v. Italian Colors Rest.*,
   570 U.S. 228 (2013) ..........................................................................................................1

*Arkin v. DoorDash, Inc.*,
   2020 WL 4937825 (E.D.N.Y. Aug. 24, 2020) .................................................................1

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011) .......................................................................................................8, 19

*Azeveda v. Comcast Cable Commc'ns LLC*,
   2019 WL 5102607 (N.D. Cal. Oct. 11, 2019) ..............................................................1, 19

*Bekele v. Lyft, Inc.*,
   918 F.3d 181 (1st Cir. 2019) .............................................................................................9

*Bernardino v. Barnes & Noble Booksellers, Inc.*,
   2017 WL 7309893 (S.D.N.Y. Nov. 20, 2017) .............................................9, 13, 14, 16

*Boursiquot v. United Healthcare Servs. of Del., Inc.*,
   98 Mass. App. Ct. 624 (2020) .........................................................................................11

*Brennan v. Opus Bank*,
   796 F.3d 1125 (9th Cir. 2015) ....................................................................................10, 11

*Britt v. ContextLogic, Inc.*,
   2021 WL 1338553 (N.D. Cal. Apr. 9, 2021) ...................................................................15

*Bynum v. Maplebear Inc.*,
   2016 WL 5373643 (E.D.N.Y. Sept. 19, 2016) .................................................................8

*Campbell v. DoorDash*,
   No. CGC-21-589694 (S.F. Super. Ct.) ............................................................................7

*Carey v. Uber Techs., Inc.*,
   2017 WL 1133936 (N.D. Ohio Mar. 27, 2017) ..........................................................11, 15

*Circuit City Stores, Inc. v. Ahmed*,
   283 F.3d 1198 (9th Cir. 2002) .........................................................................................11

*Citizens Bank v. Alafabco, Inc.*,
   539 U.S. 52 (2003) ...........................................................................................................9

Gibson, Dunn &
Crutcher LLP

*Cohen v. Santoianni*,
　330 Mass. 187 (1953).............................................................................................15

*Cordas v. Uber Techs., Inc.*,
　228 F. Supp. 3d 985 (N.D. Cal. 2017) ...................................................................15

*Cullinane v. Uber Techs., Inc.*,
　893 F.3d 53 (1st Cir. 2018) .............................................................................12, 13

*In re Daily Fantasy Sports Litig.*,
　2019 WL 6337762 (D. Mass. Nov. 27, 2019)........................................................12

*DeVito v. Autos Direct Online, Inc.*,
　37 N.E.3d 194 (Ohio Ct. App. 2015) .....................................................................12

*Dickey v. Ticketmaster LLC*,
　2019 WL 9096443 (C.D. Cal. Mar. 12, 2019) ........................................................15

*DIRECTV, Inc. v. Imburgia*,
　136 S. Ct. 463 (2015) .................................................................................................8

*DoorDash, Inc. v. Green*,
　2021 WL 5193970 (Utah Dist. Ct. Oct. 14, 2021).....................................................4

*DoorDash, Inc. v. Green*
　No. 190900588 (Utah Dist. Ct. Apr. 30, 2021)..........................................................1

*DoorDash, Inc. v. Marciano*
　No. 2015-CV-287843 (Santa Clara Super. Ct. Mar. 21, 2016).................................20

*Dorman v. Charles Schwab Corp.*,
　780 F. App'x 510 (9th Cir. 2019) .......................................................................1, 19

*Drywall Sys., Inc. v. ZVI Constr. Co., Inc.*,
　435 Mass. 664 (2002)...............................................................................................10

*Edwards v. DoorDash, Inc.*,
　2016 WL 7852532 (S.D. Tex. Dec. 8, 2016), *report and rec. adopted* 2017 WL
　244862 (S.D. Tex. Jan. 19, 2017) ...........................................................................20

*Edwards v. DoorDash, Inc.*,
　2017 WL 5514302 (S.D. Tex. Oct. 18, 2017), *adopted* 2017 WL 5514707 (S.D.
　Tex. Nov. 16, 2017) .................................................................................................20

*EEOC v. Waffle House, Inc.*,
　534 U.S. 279 (2002)..................................................................................................18

*Emilio v. Sprint Spectrum L.P.*,
　508 F. App'x 3 (2d Cir. 2013)..................................................................................11

*Emmanuel v. Handy Techs., Inc.*,
　992 F.3d 1 (1st Cir. 2021) ..................................................................................13, 15

*Epic Sys. Corp. v. Lewis*,
　138 S. Ct. 1612 (2018) ............................................................................1, 8, 9, 19, 20

*In re Facebook BiometricInfo. Privacy Litig.*,
   185 F. Supp. 3d 1155 (N.D. Cal. 2016) ..................................................................17

*First Options of Chi., Inc. v. Kaplan*,
   514 U.S. 938 (1995)........................................................................................12

*Foran v. NFL*,
   2019 WL 2408030 (S.D.N.Y. June 7, 2019)..............................................................10

*Fteja v. Facebook, Inc.*,
   841 F. Supp. 2d 829 (S.D.N.Y. 2012)......................................................................15

*Goldman-Hull v. DoorDash, Inc.*,
   No. 19-cv-01513, Dkt. 38 (N.D. Cal. Aug. 22, 2019)....................................................20

*Gonzalez v. GE Grp. Admins.*,
   321 F. Supp. 2d 165 (D. Mass. 2004) ......................................................................18

*Graham v. JPay, Inc.*,
   2019 WL 691585 (Ohio Ct. App. Feb. 15, 2019) ........................................................16

*United States ex rel. Hagerty v. Cyberonics, Inc.*,
   146 F. Supp. 3d 337 (D. Mass. 2015) ......................................................................12

*Hancock v. Am. Tel. & Tel. Co.*,
   701 F.3d 1248 (10th Cir. 2012)..............................................................................17

*Harmon v. Philip Morris Inc*,
   697 N.E.2d 270 (Ohio Ct. App. 1997) .....................................................................13

*Heller v. Rasier, LLC*,
   2020 WL 413243 (C.D. Cal. Jan. 7, 2020) ................................................................17

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   139 S. Ct. 524 (2019).........................................................................................10

*Howsam v. Dean Witter Reynolds, Inc.*,
   537 U.S. 79 (2002)........................................................................................9, 10

*Immediato v. Postmates, Inc.*,
   2021 WL 828381 (D. Mass. Mar. 4, 2021) ...............................................................12

*Joule, Inc. v. Simmons*,
   459 Mass. 88 (2011)...........................................................................................8

*Kilgore v. KeyBank, N.A.*,
   718 F.3d 1052 (9th Cir. 2013)...............................................................................11

*Lee v. Ticketmaster, L.L.C.*,
   817 Fed. App'x. 393 (9th Cir. 2020).......................................................................15

*Levin v. Caviar, Inc.*,
   146 F. Supp. 3d 1146 (N.D. Cal. 2015) ...................................................................16

*LG Elecs., Inc. v. W-LAN USA, Inc.*,
   2014 WL 3610796 (S.D.N.Y. July 21, 2014)..............................................................11

*Long v. Provide Comm., Inc.*,
   245 Cal. App. 4th 855 (2016)................................................................................................16

*Lyons v. DoorDash, Inc.*
   (C.D. Cal. May 19, 2017).......................................................................................................20

*Magana v. DoorDash, Inc.*,
   343 F. Supp. 3d 891 (N.D. Cal. 2018) .............................................................................19, 20

*Marciano v. DCH Auto Grp.*,
   14 F. Supp. 3d 322 (S.D.N.Y. 2014)......................................................................................18

*Marciano v. DoorDash, Inc.*,
   No. CGC-18-567869 (S.F. Super. Ct. Dec. 7, 2018) ............................................................20

*Mastrobuono v. Shearson Lehman Hutton*,
   514 U.S. 52 (1995) ..............................................................................................................8, 19

*McInnes v. LPL Fin., LLC*,
   466 Mass. 256 (2013)...............................................................................................................9

*Mckay v. DoorDash, Inc.*,
   No. 3:19-cv-4289, Dkt. 39 (N.D. Cal. Oct. 25, 2019).............................................................20

*Meyer v. Uber Techs., Inc.*,
   868 F.3d 66 (2d Cir. 2017)......................................................................................13, 15, 16

*Mohamed v. Uber Techs., Inc.*,
   848 F.3d 1201 (9th Cir. 2016)..........................................................................................10, 11

*Montes v. San Joaquin Cmty. Hosp.*,
   2016 WL 3015251 (S.D.N.Y. May 5, 2016).............................................................................9

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) ................................................................................................................8, 10

*Mullen v. Chaac Pizza Midwest, LLC*,
   2022 WL 673187 (S.D. Ohio Mar. 7, 2022) ..........................................................................12

*Nguyen v. Barnes & Noble, Inc.*,
   763 F.3d 1171 (9th Cir. 2014)................................................................................................15

*Nguyen v. Impac Mortg.*,
   2018 WL 5880825 (C.D. Cal. Aug. 23, 2018)....................................................................1, 20

*Nicosia v. Amazon.com, Inc.*,
   2017 WL 10111078 (E.D.N.Y. Aug. 18, 2017)......................................................................13

*Oberstein v. Live Ent., Inc.*,
   2021 WL 4772885, at *6....................................................................................................15, 16

*Peter v. DoorDash, Inc.*
   445 F. Supp. 3d 580 (N.D. Cal. 2020) ..................................................................................1, 9

*Philpott v. Pride Techs. of Ohio, L.L.C.*,
   2015 WL 6166635 (Ohio Ct. App. Oct. 21, 2015) ..................................................................8

DOORDASH, INC.'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS
CASE NO. 4:22-CV-00250-YGR

*Porcelli v. JetSmarter, Inc.*,
   2019 WL 2371896 (S.D.N.Y. June 5, 2019)................................................................10

*Prasad v. Pinnacle Prop. Mgmt. Servs., LLC*,
   2018 WL 4599645 (N.D. Cal. Sept. 25, 2018) .....................................................1, 20

*Ranazzi v. Amazon.com, Inc.*,
   46 N.E.3d 213 (Ohio Ct. App. 2015) ..............................................9, 10, 14, 15, 16

*Rent-A-Center, W., Inc. v. Jackson*,
   561 U.S. 63 (2010).......................................................................................................10

*Rudolph v. Wright Patt Credit Union*,
   175 N.E.3d 636 (Ohio Ct. App. 2021)..................................................................16, 18

*Selden v. Airbnb, Inc.*,
   2016 WL 6476934, at *5 ..............................................................................................15

*Skelton v. Care.com, Inc.*,
   2021 WL 5862447, at *5 ..............................................................................................15

*Skerlec v. Ganley Chevrolet, Inc.*,
   2012 WL 6084030 (Ohio Ct. App. Dec. 6, 2012)........................................................18

*In re StockX Customer Data Security Breach Litig.*,
   19 F.4th 873 (6th Cir. 2021).................................................................................12, 17

*Sultan v. Coinbase, Inc.*,
   354 F. Supp. 3d 156 (E.D.N.Y. 2019) .................................................................12, 13

*Swift v. Zynga Game Net., Inc.*,
   805 F. Supp. 2d 904 (N.D. Cal. 2011) ........................................................................16

*Thorne v. Square, Inc.*,
   2022 WL 542383 (E.D.N.Y. Feb. 23, 2022).........................................................14, 15

*TIC Park Centre 9 v. Wojnar*,
   2016 WL 6068136 (E.D.N.Y. Oct. 14, 2016)...............................................................10

*Tompkins v. 23andMe, Inc.*,
   2014 WL 2903752 (N.D. Cal. June 25, 2014) .............................................................16

*In re Uber Techs., Inc.*,
   2019 WL 6317770 (C.D. Cal. Aug. 19, 2019)..............................................................17

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
   363 U.S. 574 (1960).................................................................................................12, 18

*Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
   464 F. Supp. 3d 634 (S.D.N.Y. 2020)..........................................................................15

*Valle v. ATM Nat., LLC*,
   2015 WL 413449 (S.D.N.Y. Jan. 30, 2015)..................................................................16

*Volt Info. Scis. v. Bd. of Trustees of Leland Stanford Junior Univ.*,
   489 U.S. 468 (1989).......................................................................................................19

vi

Gibson, Dunn &
Crutcher LLP

*Wagner v. Stratton Oakmont, Inc.*,
    83 F.3d 1046 (9th Cir. 1996)..............................................................................................18

*Webb v. DoorDash, Inc.*,
    No. 19-cv-000665, Dkt. 30 (N.D. Ga. Jan. 9, 2020) ........................................................19

*West v. Uber Techs.*,
    2018 WL 5848903 (C.D. Cal. Sept. 5, 2018).....................................................................17

*Zachman v. Hudson Valley Fed. Credit Union*,
    2021 WL 1092508 (S.D.N.Y. Mar. 22, 2021) ...................................................................18

**Statutes**

9 U.S.C. § 2 ..............................................................................................................................2, 8

9 U.S.C. § 3 ...................................................................................................................................2

9 U.S.C. § 4 ..............................................................................................................................2, 9

Mass. Gen. Laws c. 93A, *et seq.* ..................................................................................................7

N.Y. Gen. Bus. Law § 349 ...........................................................................................................7

Ohio Rev. Code Ann. § 1345.02, *et seq.*......................................................................................7

DOORDASH, INC.'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS
CASE NO. 4:22-CV-00250-YGR

Gibson, Dunn &
Crutcher LLP

**INTRODUCTION**

Plaintiffs Zachary Chin, Joseph Flinders, and Quiana Pleasant (collectively, "Plaintiffs") are consumers who purportedly placed food orders on the platform operated by DoorDash. Plaintiffs allege DoorDash imposes hidden fees and purport to assert claims on behalf of all DoorDash users nationwide or in their respective states of New York, Ohio, and Massachusetts. DoorDash disputes Plaintiffs' claims, but this case cannot proceed to the merits in court, nor can it proceed on a class basis. Plaintiffs' claims must be arbitrated on an individual basis.[1]

Plaintiffs agreed on multiple occasions to the then-operative version of DoorDash's Terms & Conditions ("T&C"). In so doing, they each agreed, pursuant to an unambiguous arbitration agreement contained within the T&C, to arbitrate all disputes with DoorDash and waived their rights to resolve claims on a class basis. Plaintiffs could have opted out of arbitration with DoorDash, but elected not to. The Court should compel them to arbitrate their individual claims per the terms of their agreements.

The Federal Arbitration Act requires courts to enforce valid and enforceable arbitration agreements, including class-action waivers. *See Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1619 (2018); *Am. Express Corp. v. Italian Colors Rest.*, 570 U.S. 228, 238–39 (2013). The parties' arbitration agreements, including the class-action waivers therein, are valid and enforceable under the FAA and cover Plaintiffs' claims. Many courts have recognized that class-action waivers like the one in DoorDash's T&C must be enforced under the Supreme Court's decision in *Epic Systems*. *See, e.g.*, *Dorman v. Charles Schwab Corp.*, 780 F. App'x 510, 514 (9th Cir. 2019); *Azeveda v. Comcast Cable Commc'ns LLC*, 2019 WL 5102607, at *7 (N.D. Cal. Oct. 11, 2019); *Prasad v. Pinnacle Prop. Mgmt. Servs., LLC*, 2018 WL 4599645, at *6 (N.D. Cal. Sept. 25, 2018); *Nguyen v. Impac Mortg.*, 2018 WL 5880825, at *8 (C.D. Cal. Aug. 23, 2018). Likewise, multiple courts have evaluated the DoorDash T&Cs specifically and compelled individual arbitrations of claims brought by other DoorDash consumers. *See, e.g.*, *Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580, 587 (N.D. Cal. 2020); *Arkin v. DoorDash, Inc.*, 2020 WL 4937825, at *5 (E.D.N.Y. Aug. 24, 2020); Declaration of Ilissa Samplin ("Samplin Decl.") Ex. G, *DoorDash, Inc. v. Green* (Utah Dist. Ct. Apr. 30, 2021).

---

[1] On March 22, 2022, the parties filed a joint stipulation to stay proceedings with respect to Plaintiffs Rebecca Schwartz and Daniel Chou. Accordingly, neither Plaintiff is a subject of this motion. ECF No. 22.

That same result should follow here. DoorDash requests the Court compel Plaintiffs to arbitrate their claims on an individual basis, stay the action pending the resolution of this motion, and stay all further proceedings pending completion of arbitration. *See* 9 U.S.C. §§ 2–4.

## STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY

**A.    DoorDash's Platform Connects Customers, Restaurants, and Delivery Contractors**

DoorDash is a technology company headquartered in San Francisco that facilitates food ordering and delivery through its online platform. Shao Decl. ¶ 3. The platform connects consumers, a broad array of restaurants and other merchants, and independent-contractor delivery providers. *Id.* Consumers can access the platform via the DoorDash website or mobile application ("DoorDash app") on a smartphone. *Id.* Consumers typically place and pay for orders via the DoorDash app. *Id.*

**B.    Plaintiffs Sign Up for DoorDash Accounts and Agree to Arbitrate Their Disputes on an Individual Basis Under the T&C Several Times**

**1.    Plaintiff Flinders Repeatedly Agrees to the T&C**

Plaintiff Flinders signed up for a DoorDash account in October 2020, at which time he agreed to the then-operative T&C in effect since July 2020 ("July 2020 T&C"). *Id.* ¶¶ 7–9. To sign up for a consumer account, Flinders had to select a "Continue with Facebook," "Continue with Google," "Continue with Apple," or "Sign Up" button from the DoorDash sign-up screen. *Id.* ¶ 7. Below these buttons, the screen stated: "By clicking Sign up, Continue with Facebook, Continue with Google or Continue with Apple, you agree to our Terms and Conditions and Privacy Statement." *Id.* The words "Terms and Conditions" were in red font, underlined, and hyperlinked to the July 2020 T&C, affording Flinders an opportunity to review those terms before indicating his agreement to them. *Id.* This disclosure would have been visible on the device Flinders used to sign up for his account. *Id.* On October 2, 2020, Flinders clicked on the "Continue with Google" button from the DoorDash sign-up screen. *Id.* ¶ 9. After clicking "Continue with Google," Flinders was taken to a second screen where he provided his Google log-in credentials and was given another opportunity to review the operative T&C via hyperlink. *Id.* Accordingly, Flinders agreed to the July 2020 T&C. *Id.*

The July 2020 T&C prominently put consumers on notice of the arbitration agreement contained therein; the first page of the July 2020 T&C included bold, capitalized text reading:

SECTION 12 … OF THIS AGREEMENT CONTAINS PROVISIONS THAT GOVERN HOW CLAIMS THAT YOU AND WE HAVE AGAINST EACH OTHER ARE RESOLVED, INCLUDING, WITHOUT LIMITATION, ANY CLAIMS THAT AROSE OR WERE ASSERTED BEFORE THE EFFECTIVE DATE OF THIS AGREEMENT. IN PARTICULAR, SECTION 12 SETS FORTH OUR ARBITRATION AGREEMENT WHICH WILL, WITH LIMITED EXCEPTIONS, REQUIRE DISPUTES BETWEEN US TO BE SUBMITTED TO BINDING AND FINAL ARBITRATION.

*Id.* Ex. B at 1. Section 12 of the July 2020 T&C was entitled "Dispute Resolution." *Id.* § 12. Users like Flinders "agree[d] that any dispute or claim relating in any way to [their] access or use of the [DoorDash] Services … , to any advertising or marketing communications regarding DoorDash or the Services, … or to any aspect of [their] relationship or transactions with DoorDash as … consumer[s] of [its] Services will be resolved by binding arbitration, rather than in court." *Id.* § 12(a). This arbitration agreement contained a separate subsection with an explicit and unambiguous "Waiver of Class or Consolidated Actions":

YOU AND DOORDASH AGREE TO WAIVE ANY RIGHT TO RESOLVE CLAIMS WITHIN THE SCOPE OF THIS ARBITRATION AGREEMENT ON A CLASS, COLLECTIVE, OR REPRESENTATIVE BASIS. ALL CLAIMS AND DISPUTES WITHIN THE SCOPE OF THIS ARBITRATION AGREEMENT MUST BE ARBITRATED ON AN INDIVIDUAL BASIS AND NOT ON A CLASS BASIS. CLAIMS OF MORE THAN ONE CUSTOMER OR USER CANNOT BE ARBITRATED OR LITIGATED JOINTLY OR CONSOLIDATED WITH THOSE OF ANY OTHER CUSTOMER OR USER.

*Id.* § 12(e). The arbitration agreement in the July 2020 T&C also contained a delegation clause stating that "[t]he arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Arbitration Agreement." *Id.* § 12(c). And it afforded all users, including Flinders, the right to opt out of arbitration with DoorDash within 30 days of signing up for an account on the platform:

Opt Out. You may opt out of this Arbitration Agreement. If you do so, neither you nor DoorDash can force the other to arbitrate as a result of this Agreement. To opt out, you must notify DoorDash in writing no later than 30 days after first becoming subject to this Arbitration Agreement. Your notice must include your name and address, your DoorDash username (if any), the email address you used to set up your DoorDash account (if you have one), and a CLEAR statement that you want to opt out of this Arbitration Agreement. You must send your opt-out notice to: opt-out@doordash.com.

*Id.* § 12(f). The July 2020 T&C notified consumers of their right to opt out of arbitration not only in Section 12(f), but also in bold, capitalized text on the first page of the agreement:

UNLESS YOU OPT OUT OF THE ARBITRATION AGREEMENT: (1) YOU WILL BE PERMITTED TO PURSUE CLAIMS AND SEEK RELIEF AGAINST US ON AN

Gibson, Dunn & Crutcher LLP

INDIVIDUAL BASIS, NOT AS A PLAINTIFF OR A CLASS MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION OR PROCEEDING; AND (2) YOU ARE WAIVING YOUR RIGHT TO SEEK RELIEF IN A COURT OF LAW AND TO HAVE A JURY TRIAL ON YOUR CLAIMS.

*Id.* at 1. Flinders could have, but did not, opt out of arbitration with DoorDash. *Id.* ¶ 16.

The July 2020 T&C also included a modification provision, informing users that:

DoorDash reserves the right to modify the terms and conditions of this Agreement or its policies relating to the Software or Services at any time, effective upon posting of an updated version of this Agreement through the Services. You should regularly review this Agreement, as your continued use of the Services after any such changes constitutes your agreement to such changes.

*Id.* Ex. B § 2. As a result, when Flinders agreed to the July 2020 T&C, he also agreed his continued use of the DoorDash app and platform would constitute agreement to any updated version of the T&C once the updated version was published on the platform or app.

DoorDash updates the T&C from time to time, and did so on several occasions after Flinders signed up for DoorDash—including, most recently, on March 29, 2021. *Id.* ¶¶ 12–15. Each time DoorDash updated the T&C, it posted the updated terms on its website. *Id.* Like the July 2020 T&C, every subsequent version of the T&C included (i) an arbitration agreement that provided for arbitration on an individual basis, (ii) a class-action waiver, and (iii) a modification provision that made subsequent versions of the T&C effective upon posting on DoorDash's website. *Id.* Exs. D §§ 12(a), 12(f), 2; E §§ 12(a), 12(f), 2; F §§ 12(a), 12(f), 2; G §§ 12(a), 12(f), 2.

Flinders manifested his assent to each new version of the T&C by continuing to use the DoorDash platform, including by placing an order as recently as June 5, 2021. *Id.* ¶¶ 12–15.[2] He never exercised his right to opt out of arbitration with DoorDash (and has never contended he did so). *See id.* ¶ 16. Therefore, Flinders is bound by the March 2021 T&C and must arbitrate his claims with ADR Services. *See id.* Ex. G § 12(c).

---

[2] Unlike prior T&C versions, which provided for arbitration with Judicial Arbitration and Mediation Services ("JAMS") (Shao Decl. Exs. B § 12(b); C § 12(c)), the T&C version by which Plaintiffs Flinders and Pleasant are bound provides for arbitration with ADR Services, Inc. ("ADR Services"). *Id.* Exs. D § 12(c); E § 12(c); F § 12(c). The change of arbitration providers was not a material change of which Plaintiffs were required to receive notice. *DoorDash, Inc. v. Green*, 2021 WL 5193970 (Utah Dist. Ct. Oct. 14, 2021) ("The Court concludes that there was no unfair surprise or prejudice to Respondent on account of DoorDash simply changing the arbitration provider from JAMS to ADR Services, which was not a material change to the agreement requiring notice.").

**Plaintiff Pleasant Repeatedly Agrees to the T&C**

Like Flinders, Plaintiff Pleasant manifested her assent to the operative T&C at multiple points during her use of the DoorDash app. On February 19, 2019, Pleasant signed up for a DoorDash account, at which time she agreed to the then-operative T&C in effect since April 2018 ("April 2018 T&C"). *Id.* ¶¶ 30–32; *id.* Ex. M. To sign up for a consumer account, Pleasant had to select either a "Continue with Facebook," "Continue with Google," or "Sign Up" button from the DoorDash sign-up screen. *Id.* ¶ 30. Immediately above the "Sign Up" button was the statement: "By clicking Sign up, Continue with Facebook, or Continue with Google, you agree to our Terms and Conditions and Privacy Statement." *Id.* The words "Terms and Conditions" were in blue, underlined, and hyperlinked to the April 2018 T&C, affording Pleasant an opportunity to review those terms before indicating her agreement to them. *Id.* This disclosure was visible on the mobile device Pleasant used to sign up. *Id.* On February 19, 2019, Pleasant clicked on the "Continue with Google" button from the DoorDash sign-up screen. *Id.* ¶ 32. After clicking "Continue with Google," Pleasant was taken to a second screen where she provided her Google log-in credentials. *Id.* Accordingly, Pleasant agreed to the April 2018 T&C. *Id.*

Like the July 2020 T&C described above, the April 2018 T&C and every subsequent version of the T&C to which Pleasant consented included (i) an arbitration agreement that provided for arbitration on an individual basis, (ii) a class-action waiver, and (iii) a modification provision that made subsequent versions of the T&C effective upon posting on DoorDash's website. *Id.* Exs. M §§ 12(a), 12(e), 1; O §§ 12(a), 12(e), 2; D §§ 12(a), 12(f), 2; E §§ 12(a), 12(f), 2; F §§ 12(a), 12(f), 2; G §§ 12(a), 12(f), 2. Like Flinders, Pleasant could have, but did not, exercise her right to opt out of arbitration with DoorDash. *Id.* ¶ 44. And like Flinders, Pleasant agreed to subsequent T&C versions by continuing to access or use the DoorDash platform, including by placing an order as recently as May 18, 2021. *Id.* ¶¶ 48–43. Pleasant is thus bound by the March 2021 T&C and must arbitrate her claims with ADR Services. *Id.* ¶ 43; *id.* Ex. F.

In addition to accepting DoorDash's T&C by continuing to use DoorDash's platform, Pleasant again manifested acceptance by signing up for a DoorDash account once more. On December 10, 2020, Pleasant created an additional DoorDash account by tapping "Continue with Apple" to sign up.

*Id.* ¶¶ 33–35.  The sign-up screen in December 2020 informed Pleasant that "[b]y clicking … Continue with Apple … you agree to our Terms and Conditions and Privacy Statement."  *Id.* ¶ 33.  The words "Terms and Conditions" were in blue and hyperlinked to the November 2020 T&C.  *Id.*  Accordingly, by tapping "Continue with Apple" on December 10, 2020, Pleasant agreed to the then-operative T&C in effect since November 2020 ("November 2020 T&C").  *Id.* ¶¶ 33–35; *id.* Ex. D.

### 3.   Plaintiff Chin Repeatedly Agrees to the T&C

Like Flinders and Pleasant, Plaintiff Chin manifested his assent to the operative T&C at multiple points during his use of the DoorDash app.  On October 29, 2020, Chin signed up for a DoorDash account, at which time he agreed to the then-operative T&C, the July 2020 T&C.  *Id.* ¶¶ 18–21.  To sign up for a consumer account on October 29, 2020, Chin first had to select a "Get started" button.  *Id.* ¶ 18.  Immediately below that button was the statement:  "By clicking Sign up, Continue with Facebook, or Continue with Google, you agree to our Terms and Conditions and Privacy Statement."  *Id.*  The words "Terms and Conditions" were in blue, underlined, and hyperlinked to the July 2020 T&C, affording Chin the opportunity to review those terms before proceeding.  *Id.*

Once Chin clicked "Get started," he would have been taken to a second screen where he had to select either a "Continue with Facebook," "Continue with Google," or "Sign Up" button from the DoorDash sign-up screen.  *Id.* ¶ 19.  Immediately below these buttons was the statement:  "By clicking Sign up, Continue with Facebook, Continue with Google, or Continue with Apple, you agree to our Terms and Conditions and Privacy Statement."  *Id.*  The words "Terms and Conditions" were in red, underlined, and hyperlinked to the July 2020 T&C, affording Chin another opportunity to review those terms before indicating his agreement to them.  *Id.*  This disclosure was visible on the Android device Chin used to sign up.  *Id.*  On October 29, 2020, Chin clicked on the "Continue with Google" button from the DoorDash sign-up screen.  *Id.* ¶ 21.  After clicking "Continue with Google," Chin was taken to a second screen where he provided his Google log-in credentials and was given another opportunity to review the operative T&C via hyperlink on the sign-up page.  *Id.*  Accordingly, Chin agreed to the July 2020 T&C.  *Id.*

Chin also signed up for DoorDash's subscription service, DashPass, on November 24, 2020, and re-affirmed his consent to be bound by the then-operative T&C (the "November 2020 T&C").  *Id.*

Gibson, Dunn & Crutcher LLP

¶¶ 23–25.  To sign up for DashPass in November 2020, Chin had to select "Get DashPass" on the DashPass sign-up screen.  *Id.* ¶ 23.  Immediately adjacent to the "Get DashPass" button was the statement:  "By tapping the button below, you agree to the Terms and Conditions.  You also agree to a recurring monthly charge (currently $9.99) until you cancel.  Cancel in app or online prior to the renewal date to avoid future charges.  See Cancellation Policy."  *Id.*  The words "Terms and Conditions" were in blue, underlined, and hyperlinked to the November 2020 T&C.  *Id.*  Accordingly, Chin agreed to the November 2020 T&C.  *Id.*

As noted above, the July 2020 T&C and November 2020 T&C to which Chin affirmatively consented included (i) an arbitration agreement that provided for arbitration on an individual basis, (ii) a class-action waiver, and (iii) a modification provision that made subsequent versions of the T&C effective upon posting on DoorDash's website.  *Id.* Exs. D §§ 12(a), 12(f), 2; B §§ 12(a), 12(e), 2.  Like Flinders and Pleasant, Chin could have, but did not, exercise his right to opt out of arbitration with DoorDash.  *Id.* ¶ 27.  And like Flinders and Pleasant, Chin agreed to subsequent T&C versions by continuing to access or use the DoorDash platform, including by placing an order as recently as December 5, 2020.  *Id.* ¶ 26.  Chin is thus bound by the November 2020 T&Cs and must arbitrate his claims with JAMS.  *Id.*

**C.**  **Plaintiffs File This Lawsuit Against DoorDash Notwithstanding Their Agreements to Individually Arbitrate Disputes**

Despite agreeing to arbitrate their disputes individually, Plaintiffs filed this lawsuit[3] on November 5, 2021, alleging DoorDash imposes hidden delivery charges on consumers and misrepresents the costs of "food delivery services" in marketing materials in violation of the New York (N.Y. Gen. Bus. Law § 349), Massachusetts (Mass. Gen. Laws c. 93A, *et seq.*), and Ohio (Ohio Rev. Code Ann. § 1345.02, *et seq.*) deceptive and unfair practices statutes, and asserting common law unjust enrichment.  Compl. ¶¶ 144–83.[4]  Plaintiffs purport to represent a "[c]lass of similarly situated persons"

---

[3]  Plaintiffs' counsel previously filed a lawsuit on behalf of two other individuals making substantially the same allegations about DoorDash's consumer fees.  *See Campbell v. DoorDash, Inc.*, No. CGC-21-589694 (S.F. Super. Ct.).  On September 27, 2021, that case was stayed pending arbitration. Samplin Decl. Ex. H at 2.

[4]  Although the Complaint asserts claims under California law, the parties recently stipulated that both California Plaintiffs (Schwartz and Chou) will arbitrate their claims on an individual basis and

*(Cont'd on next page)*

Gibson, Dunn &
Crutcher LLP

composed of "[a]ll consumers in [New York, Massachusetts, Ohio, and nationwide] who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, ordered food delivery through the DoorDash mobile app or website, and were assessed higher delivery charges than represented." *Id.* ¶ 102.

ARGUMENT

The Court should compel Plaintiffs' claims to individual arbitration because they agreed to arbitrate their disputes with DoorDash multiple times and waived their rights to bring a class action.

### A.    The Arbitration Agreement in the T&C Is Governed by the Federal Arbitration Act

The FAA declares a "liberal federal policy" favoring arbitration. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); *Epic Systems*, 138 S. Ct. at 1621. Arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract" (9 U.S.C. § 2), and courts are required to "move" parties "out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983). The FAA governs the arbitration agreement in DoorDash's T&C for two independent reasons.

***First***, the agreement expressly states that it is governed by the FAA "in all respects" (*e.g.*, Shao Decl. Exs. B § 12(b); D § 12(c); E § 12(c); F § 12(c); G § 12(c); O § 12(b); M § 12(2)(b)), which brings it within the purview of the FAA. *Mastrobuono v. Shearson Lehman Hutton*, 514 U.S. 52, 63–64 (1995); *DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 468–71 (2015). The FAA governs—even absent evidence of an effect on interstate commerce—if the parties so agree. *See Joule, Inc. v. Simmons*, 459 Mass. 88, 94 (2011) (finding agreement governed by FAA "[b]y its express terms"); *Philpott v. Pride Techs. of Ohio, L.L.C.*, 2015 WL 6166635, at *3 (Ohio Ct. App. Oct. 21, 2015), *overruled on other grounds by Fries v. Greg G. Wright & Sons, LLC*, 120 N.E.3d 326 (Ohio Ct. App. 2018) ("[T]he law … chosen by agreement of the parties typically governs substantive issues regarding contract enforcement" of an arbitration agreement.); *Bynum v. Maplebear Inc.*, 2016 WL 5373643, at *4 (E.D.N.Y. Sept. 19, 2016) (compelling arbitration under FAA where parties contractually agreed to be

stay such claims until they have done so. *See supra* n.1. Because so-called "public injunction" remedies are also uniquely a creature of California law, there is no active request for such relief relevant to the remaining Plaintiffs DoorDash herein seeks to compel to individual arbitration.

governed by FAA without a finding of impact on interstate commerce); *Montes v. San Joaquin Cmty. Hosp.*, 2016 WL 3015251, at *1 (S.D.N.Y. May 5, 2016) (same). Courts must "enforce arbitration agreements according to their terms," including this choice-of-law provision selecting the FAA. *Epic Systems*, 138 S. Ct. at 1619.

**Second**, the FAA applies because the agreement "affect[s] commerce." *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273–274, 281 (1995); *accord*, *e.g.*, *McInnes v. LPL Fin., LLC*, 466 Mass. 256, 260–62 (2013) ("where the underlying contract affects interstate commerce, the arbitration agreement is governed by the FAA"). "Involving commerce" is "functional[ly] equivalent" to "affecting commerce," which "normally signals Congress' intent to exercise its Commerce Clause powers to the full." *Allied-Bruce Terminix*, 513 U.S. at 273. This is so "even if the parties did not contemplate an interstate commerce connection." *Id.* at 281; *accord Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003). Courts regularly apply the FAA where, as here, a contract involves transactions and communications over email and the Internet. *See Bekele v. Lyft, Inc.*, 918 F.3d 181, 185–86 (1st Cir. 2019); *Bernardino v. Barnes & Noble Booksellers, Inc.*, 2017 WL 7309893, at *2 (S.D.N.Y. Nov. 20, 2017); *Ranazzi v. Amazon.com, Inc.*, 46 N.E.3d 213, 218 (Ohio Ct. App. 2015).

Here, the FAA applies because DoorDash "is a technology company … that facilitates food ordering and food delivery through its online platform" that "connects consumers, a broad array of restaurants and other merchants, and [contractors]." Shao Decl. ¶ 3. Consumers may access the DoorDash platform via the DoorDash website or the DoorDash app. *Id.* Contractors typically receive delivery opportunities via the DoorDash app on their smartphone or other mobile device. *Id.* And DoorDash conducts business in all 50 states, the District of Columbia, and internationally. *See* Samplin Decl. Ex. A. (Aughney Decl.) ¶¶ 4–8. Therefore, the FAA applies. *See Peter*, 445 F. Supp. 3d at 583 (finding the FAA governs DoorDash's T&C).

**B.** **Plaintiffs Agreed to Arbitrate Their Claims on an Individual Basis**

The FAA requires courts, upon motion, to compel arbitration "in accordance with the terms of the agreement." 9 U.S.C. § 4. In determining whether to compel arbitration under the FAA, courts generally examine two "gateway" issues: (i) whether there is a valid agreement to arbitrate between the parties, and (ii) whether the agreement covers the dispute. *Howsam v. Dean Witter Reynolds, Inc.*,

537 U.S. 79, 83–84 (2002).  Doubts over the proper interpretation of the agreement "should be resolved *in favor of arbitration*, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense of arbitrability."  *Moses H. Cone*, 460 U.S. at 24–25 (emphasis added); *see also Drywall Sys., Inc. v. ZVI Constr. Co., Inc.*, 435 Mass. 664, 666 (2002) (indicating that where an arbitration provision exists, there is a presumption of arbitrability under Massachusetts law); *TIC Park Centre 9 v. Wojnar*, 2016 WL 6068136, at *5 (E.D.N.Y. Oct. 14, 2016) (same, New York law); *Ranazzi*, 46 N.E.3d at 217 (same, Ohio law).

### 1.    The Delegation Clause in the Arbitration Agreement Is Valid and Enforceable

Before reaching these gateway issues, courts must determine whether the parties agreed to commit threshold questions of arbitrability to the arbitrator.  *See Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) ("An agreement to arbitrate a gateway issue is simply an additional antecedent agreement the party seeking arbitration asks the court to enforce ….").  If the parties "clearly and unmistakably" agreed to delegate questions of arbitrability to the arbitrator, the arbitrator must decide the threshold issues.  *Howsam*, 537 U.S. at 83; *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (courts may not override delegation clauses); *see also Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208–09 (9th Cir. 2016) (clear and unmistakable delegation clauses must be enforced); *Brennan v. Opus Bank*, 796 F.3d 1125, 1132 (9th Cir. 2015) (same); *Foran v. NFL*, 2019 WL 2408030, at *1–3 (S.D.N.Y. June 7, 2019) (enforcing delegation clause under *Henry Schein*); *Porcelli v. JetSmarter, Inc.*, 2019 WL 2371896, at *4 (S.D.N.Y. June 5, 2019) (same).

Here, the arbitration agreement in the T&C clearly and unmistakably provides that "[t]he arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Arbitration Agreement."  Shao Decl. Exs. G § 12(d); F § 12(d); E § 12(d); D § 12(d); B § 12(c); O § 12(c); M § 12(3)(c).  Moreover, the T&C expressly incorporates the arbitration providers' rules.  *See id.* Exs. G § 12(c); F § 12(c); E § 12(c) (incorporating ADR Services rules); Exs. D § 12(c); B § 12(b); O § 12(b); M § 12(2)(b) (incorporating JAMS rules).  Those rules also clearly and unmistakably delegate questions of arbitrability to the arbitrator.  *See* Samplin Decl. Ex. C, at 5 (ADR Services Rule 8: "Unless the issue of arbitrability has been previously determined by the court, the arbitrator shall have the power

Gibson, Dunn &
Crutcher LLP

to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement."); *id.* Ex. B, at 5 (JAMS Rule 8: "The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter."). The express incorporation of the ADR Services and JAMS rules constitutes further clear and unmistakable evidence of the parties' intent to arbitrate the threshold issue of arbitrability. *See Brennan*, 796 F.3d at 1130. The Court should enforce this unambiguous agreement. *See Mohamed*, 848 F.3d at 1209.

Courts regularly hold that if an arbitration agreement provides an opportunity to opt out, it is not adhesive, and those who would challenge it cannot establish procedural unconscionability. *See*, *e.g.*, *id.* at 1211; *Kilgore v. KeyBank, N.A.*, 718 F.3d 1052, 1059 (9th Cir. 2013) (*en banc*); *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199 (9th Cir. 2002). As a corollary, courts regularly uphold delegation clauses in voluntary arbitration agreements. *See*, *e.g.*, *Mohamed*, 848 F.3d at 1211; *Boursiquot v. United Healthcare Servs. of Del., Inc.*, 98 Mass. App. Ct. 624, 629–30 (2020) (enforcing delegation provision under Massachusetts law); *Emilio v. Sprint Spectrum L.P.*, 508 F. App'x 3, 4–5 (2d Cir. 2013) (same, New York law); *LG Elecs., Inc. v. W-LAN USA, Inc.*, 2014 WL 3610796, at *6 (S.D.N.Y. July 21, 2014) (same); *Carey v. Uber Techs., Inc.*, 2017 WL 1133936, at *8 (N.D. Ohio Mar. 27, 2017) (same, Ohio law).

Here, DoorDash conspicuously notified Plaintiffs of their right to opt out of arbitration on the very first page of the relevant T&C *and* in a stand-alone section of the arbitration agreement entitled "Opt Out." *E.g.*, Shao Decl. Exs. G § 12(h); F § 12(h); E § 12(h); D § 12(h); B § 12(h); O § 12(f); M § 12(6)(f). The arbitration agreement states that a user "may opt out of this Arbitration Agreement" and that "[i]f you do so, neither you nor the Company can force the other to arbitrate as a result of this Agreement." *Id.* Plaintiffs had 30 days to notify DoorDash of their desire to opt out of arbitration. *Id.* Each Plaintiff declined to do so. Shao Decl. ¶¶ 16, 27, 44. This meaningful opportunity to opt out renders Plaintiffs' agreements to arbitrate voluntary and precludes a finding of procedural unconscionability. *See Mohamed*, 848 F.3d at 1211; *Kilgore*, 718 F.3d at 1059; *Circuit City Stores*, 283 F.3d at 1199. Plaintiffs should be required to arbitrate the threshold issue of arbitrability.

## 2. The Gateway Issues Under the FAA Are Satisfied

Even if the Court finds that it should determine arbitrability (it should not), it should compel

Plaintiffs' claims to individual arbitration because both "gateway" issues under the FAA are met.

### a. A Valid Agreement to Arbitrate Exists

"[A]rbitration is a matter of contract." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). "Courts must 'rigorously enforce' arbitration agreements that are validly formed pursuant to ordinary state-law principles governing the formation of contracts." *In re Daily Fantasy Sports Litig.*, 2019 WL 6337762, at *6 (D. Mass. Nov. 27, 2019). Ordinary state-law contract principles thus are used to determine whether the parties agreed to arbitrate. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *In re StockX Customer Data Security Breach Litig.*, 19 F.4th 873, 881 (6th Cir. 2021); *Cullinane v. Uber Techs., Inc.*, 893 F.3d 53, 61 (1st Cir. 2018) (applying Massachusetts law); *Sultan v. Coinbase, Inc.*, 354 F. Supp. 3d 156, 159 (E.D.N.Y. 2019) (applying New York law); *Mullen v. Chaac Pizza Midwest, LLC*, 2022 WL 673187, at *4 (S.D. Ohio Mar. 7, 2022) (applying Ohio law).

Under state law, DoorDash must demonstrate the formation of a contract by showing an offer, acceptance, and consideration. *See United States ex rel. Hagerty v. Cyberonics, Inc.*, 146 F. Supp. 3d 337, 346 (D. Mass. 2015) (applying Massachusetts law); *Sultan*, 354 F. Supp. 3d at 159 (New York law); *DeVito v. Autos Direct Online, Inc.*, 37 N.E.3d 194, 199–200 (Ohio Ct. App. 2015) (Ohio law). Under Massachusetts law, DoorDash need only show that terms were "reasonably communicated and accepted" to establish an agreement to arbitrate exists. *Ajemian v. Yahoo!, Inc.*, 83 Mass. App. Ct. 565, 574–75 (2013). In the context of electronic offer and acceptance, a valid contract exists under Massachusetts law where there was (1) reasonable notice of the terms, and (2) reasonable manifestation of assent to those terms. *Immediato v. Postmates, Inc.*, 2021 WL 828381, at *4 (D. Mass. Mar. 4, 2021); *Ajemian*, 83 Mass. App. Ct. at 574–75. Under New York law, DoorDash must show "a manifestation of mutual assent" and that "the contract terms were presented to the offeree in [a] way that would put her on inquiry notice of such terms." *Sultan*, 354 F. Supp. 3d at 159–60. And under Ohio law, DoorDash must show that an offer was accepted by "a manifestation of mutual assent" and valid consideration. *Harmon v. Philip Morris Inc*, 697 N.E.2d 270, 271–72 (Ohio Ct. App. 1997). Plaintiffs' assent to the T&C meets these requirements.

***First***, there was reasonable notice of the terms because the DoorDash T&C were "[r]easonably

Gibson, Dunn & Crutcher LLP

conspicuous." *Ajemian*, 83 Mass. App. Ct. at 574–75; *Bernardino*, 2017 WL 7309893, at *9. Whether notice of the terms was reasonably conspicuous is a fact-intensive inquiry. *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 76 (2d Cir. 2017).

Pleasant. Under Massachusetts law, courts consider the "totality of the circumstances" to determine if reasonable notice has been provided. *Emmanuel v. Handy Techs., Inc.*, 992 F.3d 1, 7 (1st Cir. 2021). Massachusetts courts focus on whether the interface reasonably focused the user on the T&C, considering factors such as (1) how accessible the full terms and conditions were to the user; (2) what other items were on the screen such that a reasonable user's focus would be drawn to the T&C versus other items on the screen; (3) whether the text was set apart from other text on the screen; and (4) whether the link to the T&C was prominently displayed. *Cullinane*, 893 F.3d at 62–63; *Ajemian*, 83 Mass. App. Ct. at 575.

Both times Pleasant signed up for a DoorDash account, the sign-up screens gave her reasonably conspicuous notice of the T&C. Shao Decl. ¶¶ 30, 33. For example, when Pleasant signed up for an account in February 2019, she would have seen an uncluttered screen that included only the items necessary for creating an account. *Id.* ¶ 30. Below the "Continue with Google" button she selected was the disclosure informing her that by clicking the "Continue with Google" button, she was agreeing to the T&C. *Id.* Those T&C were accessible to Pleasant through a single click. *Id.* The disclosure was set apart from other text on the page, was in clearly visible text, and the hyperlinked text was the only text in blue and underlined on the screen. *Id.* When Pleasant signed up for another DoorDash account in December 2020, she similarly received reasonably conspicuous notice of the T&C on the initial sign-up screen. *Id.* ¶ 33. The fact that Pleasant viewed multiple disclosures of the T&C and had multiple opportunities to review those T&C further weighs in favor of finding reasonable notice was given. *See Nicosia v. Amazon.com, Inc.*, 2017 WL 10111078, at *13 (E.D.N.Y. Aug. 18, 2017) (finding constructive notice based on a user's repeated exposure to the disclosure statements).

Chin. As in Massachusetts, the test under New York law for determining whether a user had inquiry notice of the terms is whether the T&C disclosure was "reasonably conspicuous." *Sultan*, 354 F. Supp. 3d at 160. Courts consider a variety of factors. *Id.*; *Bernardino*, 2017 WL 7309893, at *9. These factors include: (1) how cluttered the screen disclosing the T&C was; (2) the location of the text

disclosing the T&C; (3) the location of the hyperlink and whether it was easily visible to the consumer; (4) the visibility of the text and hyperlink including the size of the font and its color; (5) whether the text was a "clear prompt" to read the T&C in that it clearly communicated that continuing would manifest assent to the T&C; and (6) whether the link to the terms was provided simultaneously or nearly simultaneously to the consumer action that constituted agreement. *Bernardino*, 2017 WL 7309893, at *9.

When Chin signed up for a DoorDash account and later signed up for a DashPass subscription, the screens on which the T&C were disclosed provided inquiry notice of those terms. Shao Decl. ¶¶ 18–21, 23. For example, when Chin enrolled in DashPass in November 2020, the initial sign-up screen was uncluttered and the hyperlinks to the T&C and Cancellation Policy were the only hyperlinks on the screen. *Id.* ¶ 23. Further, the T&C disclosure statement appeared immediately below the "Get DashPass" button and was in reasonably sized font. *Id.* The hyperlink was in blue and underlined, and the only blue text on the page were hyperlinks. *Id.* Finally, the language of the disclosure "clear[ly] prompted" Chin to read the T&C by clearly indicating that by getting DashPass, Chin was agreeing to the operative T&C and the notice was provided at the same time Chin took the action by which he agreed to the terms. *Id.* Likewise, when Chin initially signed up for a DoorDash account, the disclosure statements regarding the operative T&C were reasonably conspicuous and provided Chin with inquiry notice of the terms. *Id.* ¶¶ 18–21.

<u>Flinders</u>. Although Ohio does not require any particularly conspicuous notice, DoorDash did give Flinders "reasonably conspicuous" notice of the T&C. The initial sign-up screen Flinders saw was uncluttered and the disclosure statement was readily visible to Flinders. *Id.* ¶¶ 7–9. The disclosure statement was in reasonably sized font and the hyperlinks were brightly colored and underlined. *Id.* Finally, the language clearly informed Flinders that by continuing he agreed to the T&C, and the disclosure was presented to him at the same time he took the action that manifested his assent to the terms. *Id.*

***Second***, Plaintiffs "unambiguous[ly]" manifested assent to those terms. *Thorne v. Square, Inc.*, 2022 WL 542383, at 8, 12 (E.D.N.Y. Feb. 23, 2022) (New York); *Ajemian*, 83 Mass. App. Ct. at 574–75 (Massachusetts); *Ranazzi*, 46 N.E.3d at 216–17 (Ohio). Courts routinely enforce agreements where

the T&C disclosure statement clearly informs users that by taking a particular action, they are agreeing to the additional terms so long as the notice of the terms is reasonably conspicuous. *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014) (noting courts typically enforce agreements that, like the DoorDash T&C, contain "an explicit textual notice that continued use will act as a manifestation of the user's intent to be bound"); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 839 (S.D.N.Y. 2012); *Selden v. Airbnb, Inc.*, 2016 WL 6476934, at *5 (D.D.C. Nov. 1, 2016). Under Massachusetts, New York, and Ohio law, a user is bound by a contract to which they agree even if they do not read or understand the terms. *Cohen v. Santoianni*, 330 Mass. 187, 193 (1953) (Massachusetts); *Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 464 F. Supp. 3d 634, 643 (S.D.N.Y. 2020) (New York); *Ranazzi*, 46 N.E.3d at 217 (Ohio). In the context of Internet agreements, it is sufficient to provide a clearly identifiable hyperlink which users may click to review the T&C. *See Meyer*, 868 F. 3d at 77–78; *Ranazzi*, 46 N.E.3d at 216–17 (upholding terms only "contained in a hyperlink"); *Oberstein v. Live Nation Ent., Inc.*, 2021 WL 4772885, at *6 (C.D. Cal. Sept. 20, 2021) (upholding terms contained in a hyperlink); *Thorne*, 2022 WL 542383, at *12 (same); *Emmanuel*, 992 F.3d at 9 (noting there is no requirement under Massachusetts law that the user be required to scroll through the entire agreement to manifest assent to it).[5]

Plaintiffs affirmatively acknowledged their intent to be bound by the T&C, including its conspicuous arbitration agreement, multiple times. Flinders, Pleasant, and Chin each assented to the T&C by tapping a "Continue with Google" button that appeared adjacent to the statement: "By tapping … Continue with Google … , you agree to our Terms and Conditions and Privacy Statement," where the words "Terms and Conditions" were hyperlinked to the then-operative T&C. This disclosure clearly communicated to Plaintiffs that by taking a particular action (here, by clicking "Continue with Google"), they were agreeing to the operative T&C and provided Plaintiffs with the opportunity to review those terms before continuing with the sign-up process and becoming bound to the T&C.

---

[5] *See also Skelton v. Care.com, Inc.*, 2021 WL 5862447, at *5 (S.D. Cal. Aug. 17, 2021) (upholding terms contained in a hyperlink); *Carey v. Uber Techs.*, 2017 WL 1133936, at 84 (finding assent even where terms were contained only in a hyperlink); *Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 992 (N.D. Cal. 2017) (same); *Lee v. Ticketmaster L.L.C.*, 817 Fed. App'x 393 (9th Cir. 2020) 817 (same); *Britt v. ContextLogic, Inc.*, 2021 WL 1338553, at *5 (N.D. Cal. Apr. 9, 2021) (compelling arbitration where user clicked "Facebook" instead of "sign in"); *Dickey v. Ticketmaster LLC*, 2019 WL 9096443, at *7 (C.D. Cal. Mar. 12, 2019) (same).

Gibson, Dunn &
Crutcher LLP

Further, Chin and Flinders received additional notice of the T&C and a second opportunity to review the operative T&C when they provided their Google account credentials. Shao Decl. ¶¶ 9, 21. And then when Chin signed up for DashPass and Pleasant separately signed up for an additional DoorDash account, accompanying disclosure statements similarly informed them that by taking a particular action, they were agreeing to the T&C. *Id.* ¶¶ 23, 33. These disclosures featured clearly identifiable hyperlinks which the Plaintiffs could have clicked to easily review the T&C. *Id.* That is more than enough. *See Ajemian*, 83 Mass. App. Ct. at 576 (noting that under Massachusetts law, acceptance can be manifested if "TOS were displayed (in whole or part)" and user "click[ed] 'I accept' or t[ook] some similar action"); *Oberstein*, 2021 WL 4772885, at *6 (finding completion of account creation process manifested assent under Massachusetts law where text on same page indicated "that the user agrees to the TOU by pressing the button" and TOU were hyperlinked); *Bernardino*, 2017 WL 7309893, at *10 (finding there was manifestation of assent under New York law where "the user had adequate notice that taking a specified action manifests assent to terms" and the user took that action); *Ranazzi*, 46 N.E.3d at 216–17 (finding mutuality of assent under Ohio law by "registering for an Amazon account and placing orders" and recognizing availability of terms "only by hyperlink does not preclude a determination of reasonable notice"); *see also Meyer*, 868 F.3d at 75–80 (availability of a contract "only by hyperlink does not preclude a determination of reasonable notice").[6]

Moreover, Pleasant re-affirmed her consent to be bound by the updated T&C when she received notice via email on December 20, 2019 that the updated T&C would take effect on January 1, 2020, and she continued to use her DoorDash account thereafter. Shao Decl. ¶ 38; *id.* Ex. O. As numerous courts have held, continued use of a product or service after email notification of updated T&C constitutes assent to the updated T&C. *See, e.g.*, *Valle v. ATM Nat., LLC*, 2015 WL 413449, at *3 (S.D.N.Y. Jan. 30, 2015) (indicating assent can be manifested by continued use of a service); *Rudolph v. Wright Patt Credit Union*, 175 N.E.3d 636, 653 (Ohio Ct. App. 2021) (finding manifestation of assent by continued use of online banking platform); *Graham v. JPay, Inc.*, 2019 WL 691585, at *3

---

[6]   *See also Levin v. Caviar, Inc.*, 146 F. Supp. 3d 1146, 1157 (N.D. Cal. 2015); *Tompkins v. 23andMe, Inc.*, 2014 WL 2903752, at *8 (N.D. Cal. June 25, 2014) ; *Swift v. Zynga Game Net., Inc.* , 805 F. Supp. 2d 904, 910–12 (N.D. Cal. 2011); *Long v. Provide Comm., Inc.*, 245 Cal. App. 4th 855, 862–63 (2016).

*(Cont'd on next page)*

Gibson, Dunn &
Crutcher LLP

(Ohio Ct. App. Feb. 15, 2019) (finding acceptance due to continued use of services and "periodic agreement" to terms of service).[7] Further, each T&C version provided in bold, all-caps lettering upfront that adoption would bind users to individual arbitration of any dispute between them and DoorDash, "including without limitation any claims that arose or were asserted before the effective date of th[e] agreement," and thereby were sufficient to bind Pleasant to individual arbitration regardless of her arguments about the sign-up flow. *E.g.*, Shao Decl. Exs. G at 1; F at 1; E at 1; D at 1; O at 1; M at 1. Accordingly, any argument Pleasant may raise about the sufficiency of the sign-up flow is irrelevant and moot based on her later affirmative, repeated actions binding her to the T&Cs. *See In re StockX*, 19 F. 4th at 881–82 (finding that, after emails sent to plaintiffs indicated updates to terms of service, plaintiffs' continued login and use of their accounts manifested assent by conduct); *Heller v. Rasier, LLC,* 2020 WL 413243, at *11 (C.D. Cal. Jan. 7, 2020) (because users received direct notice of updated terms via email, "even if their initial registration processes were somehow flawed, they were still on notice of the updated terms" and compelling arbitration).

All the T&Cs also included a modification provision, which notified users that DoorDash "reserve[d] the right to modify the terms and conditions of th[e] Agreement or its policies relating to the Website, Software or Services at any time, *effective upon posting of an updated version of this Agreement on the Website or Software*." Shao Decl. Exs. G § 2; F § 2; E § 2; D § 2; B § 2; O § 2; M at 1. This provision informed consumers they should review the agreement regularly because continued use constitutes assent to the updated T&C. *Id.* Courts have held a party is bound by updated terms where the original agreement includes a provision informing them updated terms will be published on a website, and that continued use of the platform after such publication constitutes assent

---

[7] *See also West v. Uber Techs.*, 2018 WL 5848903, at *5 (C.D. Cal. Sept. 5, 2018) (holding "when consumers receive emails such as this one, continued use of the service or product constitutes assent to the updated terms" and compelling arbitration); *In re StockX*, 19 F. 4th at 881–82 (finding mutual acceptance of terms where users received an email informing plaintiffs that the company had updated its terms of service and privacy policy and the "email included hyperlinks for plaintiffs to click and 'read the full Terms of Service and Privacy Policy'"); *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1254, 1259 (10th Cir. 2012) (same); *In re Facebook BiometricInfo. Privacy Litig.*, 185 F. Supp. 3d 1155, 1167 (N.D. Cal. 2016) (holding enforceable updated terms of use when Facebook "provided notice that the terms of the user agreement were changing through an email from Facebook sent directly to the email addresses each plaintiff had on file with Facebook" and "the plaintiffs accepted and agreed to the current terms by continuing to use Facebook after receiving that notice"); *In re Uber Techs., Inc.*, 2019 WL 6317770, at *4 (C.D. Cal. Aug. 19, 2019) (same).

to the updated terms. *Zachman v. Hudson Valley Fed. Credit Union*, 2021 WL 1092508, at *7 (S.D.N.Y. Mar. 22, 2021); *Rudolph*, 175 N.E.3d at 650. As a result, Flinders, Pleasant, and Chin agreed their continued use of the DoorDash platform constituted assent to any updated version of the T&C.

DoorDash also provided Plaintiffs 30 days after accepting the T&C to opt out of arbitration. *E.g.*, Shao Decl. Exs. G § 12(h); F § 12(h); E § 12(h); D § 12(h); B § 12(f); O § 12(f); M § 12(6)(f). None did, evidencing their consent to be bound by the T&C and the mutual arbitration agreement.

***Third***, and finally, the arbitration agreements are supported by valid consideration: the parties' mutual promises to arbitrate disputes. *See Gonzalez v. GE Grp. Admins.*, 321 F. Supp. 2d 165, 169 (D. Mass. 2004) ("Consideration can … be provided by a mutuality of promises to arbitrate."); *Marciano v. DCH Auto Grp.*, 14 F. Supp. 3d 322, 337 (S.D.N.Y. 2014) (compelling arbitration under New York law and finding that "the [Arbitration] Agreement by itself contains sufficient consideration because … it mutually binds both parties to submit claims exclusively to arbitration"); *Skerlec v. Ganley Chevrolet, Inc.*, 2012 WL 6084030, at *3 (Ohio Ct. App. Dec. 6, 2012) ("No consideration is required above and beyond the mutual agreement to arbitrate."). The DoorDash T&C all include mutual promises to arbitrate such that valid consideration exists. Shao Decl. Exs. G § 12(e); F § 12(e); E § 12(e); D § 12(e); B § 12(d); O § 12(d); M § 12(4)(d).

All the elements for the valid formation of agreements to arbitrate exist here.

### b. Plaintiffs' Claims Are Covered by the Arbitration Agreement

"[A]bsent some ambiguity in the agreement … it is the language of the contract that defines the scope of disputes subject to arbitration." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002). Courts must "interpret the contract by applying general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration *in favor of arbitration*." *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996) (emphasis added); *United Steelworkers*, 363 U.S. at 582–83 (same).

There is no ambiguity here. The T&C make clear Plaintiffs' claims are subject to arbitration. Plaintiffs agreed the arbitration agreement in the T&C would apply to "any dispute or claim relating in any way to [their] access or use" of the DoorDash platform, "to any advertising or marketing communications regarding" DoorDash, "to any products or services sold or distributed through"

Gibson, Dunn &
Crutcher LLP

DoorDash, and "to any aspect of your relationship or transactions" with DoorDash, "including without limitation any claims that arose or were asserted before the effective date of th[e] agreement." *E.g.*, Shao Decl. Exs. G § 12(a); F § 12(a); E § 12(a); D § 12(a); B § 12(a); O § 12(a); M § 12(1)(a). Plaintiffs allege DoorDash concealed delivery fees and, in so doing, misled consumers who placed orders on the DoorDash platform. This is a dispute relating to Plaintiffs' access and use of the DoorDash platform, products and services sold or distributed through DoorDash, and an aspect of Plaintiffs' relationship and transactions with DoorDash. Accordingly, Plaintiffs' claim falls squarely within the scope of the arbitration agreement in the DoorDash T&C.

## C. The Arbitration Class-Action Waivers Are Enforceable

It is well settled that class-action waivers in arbitration agreements governed by the FAA are valid and enforceable. Every court to address DoorDash's arbitration agreements has determined the Arbitration Class Action Waiver is valid and enforceable and compelled plaintiffs to individual arbitration. *See, e.g.*, *Magana v. DoorDash, Inc.*, 343 F. Supp. 3d 891, 901 (N.D.Cal. 2018); *Webb v. DoorDash, Inc.*, No. 19-cv-000665, Dkt. 30 (N.D. Ga. Jan. 9, 2020). And for good reason—the Supreme Court has held not only that the FAA's "primary purpose" is "ensuring that private agreements to arbitrate are enforced according to their terms" (*Volt Info. Scis. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989); *accord Mastrobuono*, 514 U.S. at 53–54 (stating that enforcement of arbitration agreements "according to their terms" is the "central purpose" of the FAA); *Concepcion*, 563 U.S. at 344 (same)), but also that Congress' instruction to enforce arbitration agreements according to their terms "include[s] terms providing for individualized proceedings" (*Epic Systems*, 138 U.S. at 1619).

The Arbitration Class Action Waivers bar Plaintiffs from litigating or arbitrating their claims on a class-wide basis. *E.g.*, Shao Decl. Ex. G § 12(f) (parties agreed to individualized arbitration and waived "class, collective, and representative" actions); *see also id.* Exs. F § 12(f); E § 12(f); D § 12(f); B § 12(e); O § 12(e); M § 12(5)(e). This agreement is valid and must be enforced. *See Dorman*, 780 F. App'x at 514 ("Because arbitration is a matter of contract, the … waiver of class-wide and collective arbitration must be enforced according to its terms, and the arbitration must be conducted on an individualized basis.") (quotation marks and citation omitted); *Azeveda*, 2019 WL 5102607, at *7

Gibson, Dunn &
Crutcher LLP

(compelling individual arbitration because "[c]lass action waivers are enforceable where an employee has an opportunity to opt out"); *Prasad*, 2018 WL 4599645, at *6 ("[T]he waiver provision is not unconscionable and [plaintiff] cannot maintain the class, collective and representative claims."); *Nguyen*, 2018 WL 5880825, at *8 (*Epic Systems* precludes any argument "that the class and collective action waivers are unfair").

## CONCLUSION

Courts consistently compel arbitration and stay proceedings when DoorDash moves to compel arbitration under its Agreements.[8] There is no reason for a different result here. The Court should compel Plaintiffs to individual arbitration and stay all further proceedings.

Dated: March 23, 2022

GIBSON, DUNN & CRUTCHER LLP

By: ___/s/ Ilissa Samplin___
Ilissa Samplin

Attorneys for Defendant DOORDASH, INC.

---

[8] *E.g.*, *Mckay v. DoorDash, Inc.*, No. 3:19-cv-4289, Dkt. 39 (N.D. Cal. Oct. 25, 2019); *Goldman-Hull v. DoorDash, Inc.*, No. 19-cv-01513, Dkt. 38 at 16:23–17:7 (N.D. Cal. Aug. 22, 2019); *Magana*, 343 F. Supp. 3d at 899–900; *Marciano v. DoorDash, Inc.* (S.F. Super. Ct. Dec. 7, 2018) (Samplin Decl. Ex. D); *Edwards v. DoorDash, Inc.*, 2017 WL 5514302, at *13 (S.D. Tex. Oct. 18, 2017), *adopted* 2017 WL 5514707 (S.D. Tex. Nov. 16, 2017); *Edwards v. DoorDash, Inc.*, 2016 WL 7852532, at *14 (S.D. Tex. Dec. 8, 2016), *report and rec. adopted* 2017 WL 244862 (S.D. Tex. Jan. 19, 2017) (compelling arbitration after severing two provisions that were not in the T&C), *aff'd.*, 888 F.3d 738 (5th Cir. 2018); *DoorDash, Inc. v. Marciano* (Santa Clara Super. Ct. Mar. 21, 2016) (Samplin Decl. Ex. E); *Lyons v. DoorDash, Inc.* (C.D. Cal. May 19, 2017) (Samplin Decl. Ex. F).